**Joseph L. ANDERSON, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–8064.

Court of Appeals of Alaska.

Aug. 3, 2007.

---

14. *Love v. State*, 457 P.2d 622, 627 (Alaska 1969).

15. *Id.* at 628.

16. *Id.*

Colleen A. Libbey, Libbey Law Offices, LLC, Anchorage, for the Appellant.

Kenneth M. Rosenstein, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Gregg D. Renkes and Talis J. Colberg, Attorneys General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

COATS, Chief Judge.

In *Crawford v. Washington*,[1] the United States Supreme Court held that the Confrontation Clause of the United States Constitution prevents the government from introducing testimonial hearsay against a criminal defendant unless the hearsay declarant is available to be cross-examined at trial—or unless the government proves that the hearsay declarant is unavailable, *and* the defendant previously had a fair opportunity to cross-examine the declarant.[2]

Later, in *Davis v. Washington*,[3] the Supreme Court held that an out-of-court statement to a police officer is non-testimonial if the circumstances surrounding the making of the statement objectively indicate that the primary purpose of the statement was to enable the police to respond to an ongoing emergency.[4]

In the present case, the State prosecuted Joseph Anderson for assault. At Anderson's trial, the State introduced hearsay testimony concerning a statement that the victim of the assault made to the first police officer who arrived on the scene. The victim did not testify at Anderson's trial; because of this, Anderson contends that the introduction of this hearsay testimony violated his right of confrontation.

The underlying facts are fairly straightforward. Anchorage Police Officer Pamela Nelson was dispatched to the scene of a reported assault. When Officer Nelson arrived, a woman informed her that a man (later identified as Carroll Nelson) was injured in a building across the street. The woman then led Officer Nelson across the street to an apartment. In the apartment, Officer Nelson saw a man lying on the floor, covered with what appeared to be a piece of carpet. Officer Nelson testified that she asked the man, "What happened?" She testified that the man told her that "Joe had hit him with a pipe."

Anderson raised an objection to the introduction of this hearsay statement before trial. The trial judge concluded that, given the circumstances, the victim's statement fell within the hearsay exception for excited utterances.[5] We upheld that evidentiary ruling in our previous decision in this case.[6] However, the conclusion that the hearsay was admissible as an excited utterance does not resolve the issue of whether the hearsay was "testimonial" for purposes of *Crawford* and

---

**1.** 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

**2.** *Id.*, 541 U.S. at 68, 124 S.Ct. at 1374.

**3.** —— U.S. ——, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006).

**4.** *Id.*, —— U.S. at ——, 126 S.Ct. at 2273–74.

**5.** A.R.E. 803(2).

**6.** *Anderson v. State*, Alaska App. Memorandum Opinion and Judgment No. 4823 (Jan. 28, 2004), 2004 WL 178742.

*Davis.* We conclude that the victim's statement was non-testimonial because the circumstances surrounding the making of that statement objectively indicate that the primary purpose of Officer Nelson's question was to enable her to respond to an ongoing emergency.

*The Supreme Court's decisions in the companion cases of Davis v. Washington and Hammon v. Indiana*

The Confrontation Clause of the Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him[.]"

In *Crawford v. Washington,*[7] the Supreme Court held that the Confrontation Clause precludes "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination."[8] However, *Crawford* did not provide a firm definition of "testimonial" hearsay—although the Court declared that statements made by a witness during a formal police interrogation would clearly be testimonial.[9]

Two years later, in *Davis v. Washington* (and the companion case of *Hammon v. Indiana* ),[10] the Supreme Court addressed two instances where the government relied on hearsay statements that were elicited when police officers responded to reports of domestic assault. In both *Davis* and *Hammon,* the victims of the assaults did not testify at the defendants' trials, so the admission of the hearsay statements raised issues under the Confrontation Clause.

In *Davis,* the victim had called 911 to report that her boyfriend, Adrian Davis, was

assaulting her. The 911 operator (whom the court assumed to be a police agent) asked the victim, "What's going on?", and the victim replied, "He's here jumpin' on me again." The 911 operator then asked if Davis had any weapons, and the victim replied, "No. He's usin' his fists." At that point, Davis ran out the door. The operator then asked the victim other questions designed to help the police locate and identify Davis.[11]

The victim did not testify at Davis's trial. Over Davis's objection—based on the Confrontation Clause—the trial court admitted the recording of the victim's exchange with the 911 operator. The jury found Davis guilty of felony violation of a no-contact order.[12] The Supreme Court held that the victim's out-of-court statements captured on the 911 recording were not "testimonial" for purposes of the Confrontation Clause.[13] The Court explained that even a witness's statements made "in the course of police interrogation" may nevertheless be non-testimonial if:

> circumstances objectively indicat[e] that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. [On the other hand, statements to police officers] are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.[14]

The Court then pointed to several factors which led it to conclude that the hearsay statements in *Davis* were not testimonial. First, the victim "was speaking about events *as they were actually happening,* rather than 'describ[ing] past events.' "[15] Second, the vic-

---

**7.** 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).

**8.** *Id.,* 541 U.S. at 53–54, 124 S.Ct. at 1365.

**9.** *Id.,* 541 U.S. at 68, 124 S.Ct. at 1374.

**10.** —— U.S. ——, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006).

**11.** *Id.,* —— U.S. at ——, 126 S.Ct. at 2270–71, 2274 & n. 2.

**12.** *Id.,* —— U.S. at ——, 126 S.Ct. at 2271.

**13.** *Id.,* —— U.S. at ——, 126 S.Ct. at 2277, 2280.

**14.** *Id.,* —— U.S. at ——, 126 S.Ct. at 2273–74.

**15.** *Id.,* —— U.S. at ——, 126 S.Ct. at 2276 (emphasis in original) (quoting *Lilly v. Virginia,* 527 U.S. 116, 137, 119 S.Ct. 1887, 1900, 144 L.Ed.2d 117 (1999)).

tim "was facing an ongoing emergency," and her call to the 911 operator "was plainly a call for help against a bona fide physical threat."[16] Third, "the nature of what [the 911 operator] asked and [what the victim] answered ..., viewed objectively, was such that the elicited statements were necessary to be able to *resolve* the present emergency, rather than simply to learn (as in *Crawford*) what had happened in the past."[17] Finally, the victim's statements were made in a significantly less formal setting than the hearsay statements given during the station house interview in *Crawford*.[18]

In contrast, the Supreme Court (applying the same test) found the hearsay statements in *Hammon* to be testimonial.

In *Hammon*, two police officers responded to a reported domestic dispute at the Hammon household. When they arrived, they found the victim, Amy Hammon, alone on the front porch. She appeared somewhat frightened, but she told the officers that nothing was wrong. When the officers entered the home, they saw that the gas heating unit was partially damaged. The officers then spoke with Amy Hammon's husband, Hershel Hammon, who told the officers that there had been an argument, but that the argument never became physical, and everything was fine. At this point, one officer remained in the kitchen with Hershel Hammon, while the other went to speak to Amy Hammon alone. During the ensuing interview, Amy Hammon described a physical altercation between her and her husband that had occurred earlier in the evening. The officer had Amy Hammon summarize her statement in an affidavit.[19]

Amy Hammon did not testify at Hershel Hammon's trial for domestic battery and violating his probation. Over Hershel Hammon's repeated objections, the police officer who had interviewed Amy Hammon at the scene described the statements that Amy Hammon had made during their conversation, and authenticated Amy Hammon's affidavit.[20] Hershel Hammon was found guilty on both charges.[21]

The Supreme Court concluded that, under these circumstances, Amy Hammon's statements were testimonial—and thus the admission of these statements violated Hershel Hammon's right of confrontation.[22] The Court emphasized that the police officer's interrogation of Amy Hammon was aimed at eliciting a description of past, potentially criminal conduct, and that the interrogation took place under circumstances where there was no indication of an ongoing emergency.[23] The Court emphasized that the officer who questioned Amy Hammon "was not seeking to determine ... 'what is happening,' but rather 'what happened.' "[24]

In further explaining the differing results in these two cases, the Supreme Court noted a series of factors that distinguished *Davis* from *Hammon*. First, the victim in *Davis* was alone, unprotected by the police, and in immediate danger; in contrast, the victim in *Hammon* was in the presence of police officers and was protected from immediate danger.[25] Second, the victim in *Davis* was speaking in the present tense, while the victim in *Hammon* gave the police a "narrative of past events ... delivered at some remove in time from the danger she described."[26] And third, the victim in *Hammon* executed an affidavit for the specific purpose of recording past events for use in an official investigation.[27]

*Why we conclude that the hearsay statement in Anderson's case was not testimonial*

16. *Davis,* —— U.S. at ——, 126 S.Ct. at 2276.

17. *Id.* (emphasis in original).

18. *Id.*

19. *Id.,* —— U.S. at ——, 126 S.Ct. at 2272.

20. *Id.,* —— U.S. at ——, 126 S.Ct. at 2272–73.

21. *Id.,* —— U.S. at ——, 126 S.Ct. at 2273.

22. *Id.,* —— U.S. at ——, 126 S.Ct. at 2278–79.

23. *Id.,* —— U.S. at ——, 126 S.Ct. at 2278.

24. *Id.*

25. *Id.,* —— U.S. at ——, 126 S.Ct. at 2279.

26. *Id.*

27. *Id.*

The evidence in Anderson's case shows that, around 2:00 in the morning of December 1, 2000, Zonyua Robinson called 911 from the Arctic Tern Inn. Anchorage Police Officers Pamela Nelson and Dwayne Jones arrived at the Arctic Tern approximately ten minutes later.

Immediately after arriving at the Arctic Tern, Robinson flagged down Officer Nelson. Robinson was "frantic" and had a bloody, cut lip. Robinson insisted that another person was hurt and needed help. Robinson led the two officers to an apartment across the street. At this point, the officers did not know what the situation was in the apartment, or why someone needed aid.

When the police officers and Robinson got to the apartment, Robinson began yelling for "Carroll," and she told Officer Nelson that she knew that Carroll Nelson had been hurt. As the two officers entered the apartment, they walked past Anderson. Officer Jones remained with Anderson, while Officer Nelson accompanied Robinson to the back of the apartment.

When they reached a small room in the back of the apartment, Officer Nelson saw Carroll Nelson lying in a fetal position, wrapped in something resembling a discarded piece of carpet. Robinson asked Carroll Nelson if he was all right, and Carroll Nelson responded that he was hurt and having a hard time breathing. When Officer Nelson removed the material covering Carroll Nelson, she saw that Carroll Nelson was shirtless and that he had several obvious bruises on his torso. Officer Nelson asked Carroll Nelson what happened. Carroll Nelson told Officer Nelson that Anderson had hit him with a pipe.

At this point, Officer Nelson asked Carroll Nelson if he was all right, and if he could get up. Carroll Nelson said no—that he was hurt, had a hard time breathing, and was in a lot of pain. Officer Nelson assured Carroll Nelson that medical help would be arriving soon. Officer Nelson then stepped out of the room and informed Officer Jones that they were going to arrest Joseph Anderson for assault.

Officer Nelson went back to the room to check on Carroll Nelson again. The paramedics still had not arrived, so Officer Nelson asked Officer Jones to find out where the paramedics were. Only after Officer Jones located the paramedics did Officer Nelson put Anderson in handcuffs and arrest him for assault.

(We note that later events confirmed the reasonableness of Officer Nelson's concern for Carroll Nelson's physical well-being. After the paramedics transported Carroll Nelson to the hospital, he underwent immediate abdominal surgery, and he spent the next week in the hospital. The surgeon who treated Nelson described his injuries as life-threatening.)

As the Supreme Court explained in *Davis*, hearsay statements made during the course of a police interrogation are non-testimonial if the circumstances objectively indicate that the primary purpose of the interrogation was to enable the police to respond to an ongoing emergency.[28] We find that to be the case here.

Viewed objectively, the circumstances surrounding Officer Nelson's questions to Carroll Nelson demonstrate that her primary purpose was to respond to an ongoing situation: to determine the nature and extent of Carroll Nelson's injuries, and to determine the type of assistance he might need. According to the officer's testimony, when she arrived at the apartment, she had been told that someone was hurt and needed help, but she did not know that a crime had been committed. And, just before Officer Nelson questioned Carroll Nelson, the officer heard Carroll Nelson tell the woman that he was hurt, and that he was having a hard time breathing.

Under these circumstances, the primary focus of Officer Nelson's question—"What happened?"—was to sort out an ongoing emergency situation rather than to investigate a past crime. We note that even after Carroll Nelson told Officer Nelson that Anderson had hit him with a pipe, Officer Nelson did not respond by questioning Carroll Nelson further about *how* he got injured.

---

28. *Id.,* —— U.S. at ——, 126 S.Ct. at 2273–74.

Rather, Officer Nelson's follow-up questions were directed toward ascertaining the nature and extent of Carroll Nelson's injuries. She then assured Carroll Nelson that medical assistance was on the way, and she directed her partner, Officer Jones, to find out why the paramedics had not yet arrived.

We acknowledge that, even though most of the Supreme Court's discussion in *Davis* focuses on the primary purpose of the police interrogation, the Supreme Court also stated that "in the final analysis" it is "the declarant's statements, not the interrogator's questions, that the Confrontation Clause requires us to evaluate." [29] And, as we explained above, when the Supreme Court analyzed the facts of *Davis* and *Hammon*, the Court focused to some degree on factors that would affect the declarant's state of mind: (1) whether the declarant was speaking about events that were currently happening or circumstances that could currently be responded to, as opposed to events that were clearly in the past and could only be investigated and litigated; (2) whether the declarant was facing an ongoing emergency (*i.e.*, describing or seeking help for a current physical danger); and (3) whether the setting of the declarant's statement was a perilous crime scene or a safe location.[30]

But even analyzing Carroll Nelson's out-of-court statement by reference to *his* state of mind (as opposed to Officer Nelson's state of mind), we reach the same conclusion—that the out-of-court statement was not testimonial. Even though Carroll Nelson's statement was a description of a past event, his description was relevant to communicate or explain the nature and extent of his current injuries. The record shows that Carroll Nelson's injuries needed immediate attention, and he made his statement in a perilous setting.

Therefore, whether we focus on Officer Nelson's primary purpose in asking the question "What happened?" or, instead, we focus on Carroll Nelson's state of mind when he offered his answer, we reach the same conclusion: Carroll Nelson's statement to Officer Nelson—that Joe had hit him with a pipe—was non-testimonial under the tests set forth in *Crawford* and *Davis*. We conclude that the admission of this hearsay statement did not violate Anderson's right of confrontation.

The judgment of the superior court is AFFIRMED.

**29.** *Id.,* —— U.S. at ——, 126 S.Ct. at 2274 n. 1.

**30.** *Id.,* —— U.S. at ——, 126 S.Ct. at 2276, 2279.