2008 VT 114

## State of Vermont v. Michael T. Shea

[965 A.2d 504]

No. 07-124

Present: **Reiber, C.J., Dooley, Johnson, Skoglund and Burgess, JJ.**

Opinion Filed August 14, 2008

454

*Thomas Donovan, Jr.*, Chittenden County State's Attorney, and *Pamela Hall Johnson*, Deputy State's Attorney, Burlington, for Plaintiff-Appellee.

*Norman R. Blais*, Burlington, for Defendant-Appellant.

¶ 1. **Dooley, J.** Following a bench trial in Chittenden District Court, defendant was convicted of second-degree domestic assault. On appeal, defendant argues that the district court committed reversible error in admitting "testimonial" hearsay in violation of the Confrontation Clause of the Sixth Amendment. We conclude that the hearsay was not testimonial and affirm.

¶ 2. The facts of this case are undisputed on appeal. A police officer responded to a call from the dispatcher reporting that a domestic assault was "in progress" at a specific address in Burlington. The dispatcher reported that the perpetrator was no longer present at the scene. Three minutes later, the officer arrived on the scene and found a woman standing at the door, frantic, crying, bleeding from the nose and cut over her eye. The woman said that "she [had been] beat up by her boyfriend" within the last few minutes, gave the officer defendant's name, and said that he had just left the house.[1] The officer then checked the house to make sure that defendant was no longer present. After broadcasting defendant's description, the officer asked the complainant to provide further details about the assault. She responded that she and defendant had been arguing, and that defendant tried to throw her passport in the toilet. When she

---

[1] We assume that the complainant gave the statement in response to questioning by the officer, although nowhere in the evidence was there testimony to this effect. Thus, it is possible that the complainant's statements were spontaneous. The absence of police interrogation would undercut defendant's argument that the complainant's statements were testimonial. See *United States v. Arnold*, 486 F.3d 177, 190 (6th Cir. 2007) (fact that victim blurted out statement before officer asked any questions relevant to whether hearsay was testimonial). For the purposes of this appeal, however, we assume that the complainant spoke in response to questioning by the officer.

tried to stop him, defendant punched her several times, and slammed her head into a wall, and pulled loose a clump of hair. She stated that the blows caused her to see stars and injured her neck. The officer took the complainant to the Burlington Police Station, where her injuries were photographed and where she was asked to complete a lengthy sworn statement.

¶ 3. The complainant did not testify at the trial. During his testimony, the responding officer gave his description of the complainant's demeanor and appearance. The State then asked whether the complainant had said anything to the officer about her injuries. Defendant objected, stating that the officer's answer would be inadmissible hearsay and that its admission would violate the Confrontation Clause. The court overruled the objections and held that the statement was admissible under the excited-utterance exception to the hearsay rule. When the State asked the officer about further statements made by the complainant, defendant objected again, and the court permitted an ongoing objection to the officer's testimony concerning the complainant's statements.

¶ 4. On cross-examination, the officer testified that the complainant smelled of alcohol when he first arrived at the apartment. The officer also acknowledged that, shortly after arriving at the scene, he realized that there was no risk of harm to himself or the complainant and that the complainant did not need emergency medical care.

¶ 5. At the conclusion of the officer's testimony, defense counsel moved to strike, claiming that the hearsay testimony violated his client's Confrontation Clause rights. The court denied defendant's motion to strike, and subsequently denied defendant's motion for acquittal at the conclusion of the State's case.

¶ 6. In his direct case, defendant testified that the complainant attacked him and that her injuries occurred when he tried to defend himself. The court deferred its decision so that defendant could file a memorandum of law on the issue of testimonial hearsay in the case. On reviewing the memoranda submitted by the parties, the court issued an order denying defendant's motion to strike the first hearsay statement offered by the State and granting his motion to strike the remaining statements. In addressing the hearsay statement challenged here, the court concluded that it was not testimonial.

¶ 7. The court went on to consider whether, excluding the stricken statement, the State had met its burden of proving defendant's guilt beyond a reasonable doubt. The court stressed first that it did not find defendant's testimony credible. While acknowledging that defendant sustained some injuries, the court noted that the complainant was much smaller than defendant. The court then concluded that "[w]ithout considering the stricken statements," the State had met its burden "based on [the victim's] nontestimonial statement and the corroborating evidence provided by her physical appearance, her mental condition and her injuries." Accordingly, the court found defendant guilty of aggravated domestic assault in the second degree. This appeal followed.

¶ 8. We review the court's factual findings for clear error, and we review de novo the court's legal conclusion as to whether the hearsay was testimonial. See *State v. Bauder*, 2007 VT 16, ¶ 9, 181 Vt. 392, 924 A.2d 38. Defendant concedes that the statement qualifies as an excited utterance and was thus admissible under Vermont Rule of Evidence 803(2), the excited-utterance exception to the hearsay rule. The State, in turn, concedes that the complainant was unavailable to testify at trial and that defendant did not have any prior opportunity to cross-examine her. The issue, then, is whether the admitted hearsay is testimonial as defined in *Crawford v. Washington*, 541 U.S. 36, 68 (2004) (admission of testimonial hearsay violates the Confrontation Clause rights of a criminal defendant unless the declarant is available or the defendant had adequate prior opportunity to cross-examine the declarant) and *Davis v. Washington*, 547 U.S. 813 (2006).

¶ 9. In *Crawford*, the defendant stabbed a man who tried to rape the defendant's wife. The wife could not testify at the criminal trial because of the marital privilege, but the trial court admitted her tape-recorded statement to the police, made while she was in police custody as a suspect in the case. The United States Supreme Court held that the admission of the statement violated the Confrontation Clause, because the statement was testimonial; the witness was unavailable, and there was no prior opportunity for cross-examination. *Crawford*, 541 U.S. at 68. The Court intentionally avoided a comprehensive definition of testimonial hearsay, but noted that a police interrogation is testimonial. *Id.*

■ ¶ 10. In the second case, *Davis v. Washington*, 547 U.S. 813 (2006), the trial court admitted a 911 call in which the complainant said she was being assaulted and gave the name of her assailant. At the end of the call, the complainant said that the assailant was "runnin' now" and had gone out the door, leaving in a car. Four minutes after the 911 call, the police arrived and observed the claimant's shaken state and fresh injuries on her forearm and face. The complainant did not testify, but the court admitted the 911 tape. In response to the defendant's argument that the 911 statements were testimonial, the Supreme Court held that: "[s]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Id.* at 822. On the other hand, such statements are testimonial "when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Id.*

¶ 11. The Court held that the 911 statements were not testimonial. *Id.* at 828. In reaching that decision, the Court emphasized the following factors: (1) the 911 complainant was describing events as they happened, rather than past events; (2) the 911 complainant was facing an ongoing emergency; (3) the questions and answers were such "that the elicited statements were necessary to be able to *resolve* the present emergency, rather than simply to learn (as in *Crawford)* what had happened in the past"; and (4) the 911 interview was much less formal than the interview in *Crawford. Id.* at 827. Thus, the Court concluded that the circumstances of the 911 interrogation "objectively indicate[d that] its primary purpose was to enable police assistance to meet an ongoing emergency." *Id.* at 828.[2]

---

[2] *Davis* was decided with a companion case, *Hammon v. Indiana.* In *Hammon,* officers responded to a domestic-violence complaint and found a husband and wife in the house with a partially destroyed gas-heating unit. The officers separated the husband and wife and obtained from the wife a statement that the husband had shoved her to the floor, hit her, broken lamps, destroyed the telephone, disabled her van, and attacked her daughter. The Court noted that the interrogation of the wife was entirely about past events, that there was no emergency in progress, and that the wife had told the police that everything was "fine" at the time of the interview. *Davis,* 547 U.S. at 830. In holding that the statements were inadmissible

¶ 12. It comes as no surprise that defendant argues that *Crawford* governs and that admission of the statement in this case violates his Confrontation Clause rights. Nor is it surprising that the State relies on *Davis* and urges us to find no Confrontation Clause violation. The trial court applied *Davis* to the initial statement made by the complainant and concluded that the statement was nontestimonial. The court reasoned:

> Although the assault was no longer ongoing when Officer Chapman arrived, [the victim] was injured and in need of protection and assistance. The assault was so recent that [the victim] was still bleeding and the officer was not even sure that the defendant was gone. . . . [I]nformation about the defendant's identity and description [was] necessary for protection of [the victim] and the police officers.

> The circumstances here, including the recen[t] assault, [the victim's] physical injuries and emotional upset, and the fact that the defendant's whereabouts were unknown, objectively indicate that the primary purpose of the initial interrogation (prior to broadcasting the defendant's description) was to enable the police to assist and protect [the victim]. Her initial statements are not testimonial.

The court emphasized several factors in concluding that the evidence was nontestimonial, including that: (1) "[the victim] was injured and in need of protection and assistance"; (2) the assault was "recen[t]"; (3) the officer was not sure that the defendant had departed; (4) the complainant was "emotional[ly] upset"; and (5) "defendant's whereabouts were unknown."

¶ 13. This case falls between *Crawford* and *Davis* and necessarily involves defining the line between them. We have not had an occasion to address this line in our past decisions. Our one decision applying *Crawford*, *State v. Wilkinson*, 2005 VT 46, 178 Vt. 174, 879 A.2d 445, preceded *Davis* and did not involve police questioning, and we have not reached testimonial-hearsay questions in our more recent decisions. See *State v. Jackson*, 2008 VT

---

testimonial hearsay, the Court held that "the primary, if not indeed the sole, purpose of the interrogation was to investigate a possible crime." *Id.* Because of the differences between the facts of *Hammon* and this case, we do not further discuss *Hammon* and its reasoning.

71, ¶ 13, 184 Vt. 173, 956 A.2d 1126. We do, however, have the benefit of a number of decisions on point from other jurisdictions. See, e.g., *United States v. Arnold*, 486 F.3d 177 (6th Cir. 2007); *Anderson v. State*, 163 P.3d 1000 (Alaska Ct. App. 2007); *State v. Kirby*, 908 A.2d 506 (Conn. 2006); *State v. Araujo*, 144 P.3d 66 (Kan. Ct. App. 2006); *People v. Walker*, 728 N.W.2d 902 (Mich. Ct. App. 2006); *State v. Hembertt*, 696 N.W.2d 473 (Neb. 2005); *State v. Ayer*, 917 A.2d 214 (N.H. 2006); *People v. Bradley*, 862 N.E.2d 79 (N.Y. 2006); *State v. Mason*, 162 P.3d 396 (Wash. 2007).

■ ¶ 14. Although the decisions from other jurisdictions may state the matter differently, we recognize several elements to be crucial in the *Davis* analysis. The first element requires that the emergency involved be ongoing. See, e.g., *Arnold*, 486 F.3d at 190; *Anderson*, 163 P.3d at 1004; *Kirby*, 908 A.2d at 523. Courts have pointed to two independent ways in which an emergency may be ongoing. The first, present in *Davis*, arises when a crime is still in progress. See *Anderson*, 163 P.3d at 1004 (whether event is taking place at present time is a factor in determining whether a statement is not testimonial); *Kirby*, 908 A.2d at 523 (statements are not testimonial when "a crime [is] in progress"); *Araujo*, 144 P.3d at 72 (same). The second sign that an emergency is ongoing occurs when the victim or an officer is in danger, either because he or she needs emergency medical attention or because the defendant poses a threat. See, e.g., *Anderson*, 163 P.3d at 1003-04 (hearsay not testimonial when victim was unable to move on his own or breathe comfortably and needed emergency medical assistance); *Ayer*, 917 A.2d at 224-25 (hearsay not testimonial when officer did not know whether suspect was armed, still present, or threatening); *Mason*, 162 P.3d at 403 (hearsay not testimonial where victim still faces "a bona fide physical threat") (quotations omitted).

■ ¶ 15. The second factor involves the officer's purpose in prompting the hearsay statement: whether the officer's intention was to resolve the emergency at hand or to acquire evidence for a subsequent criminal prosecution. *Davis*, 547 U.S. at 822 (statement is testimonial when "the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution"); see also *Anderson*, 163 P.3d at 1004; *Araujo*, 144 P.3d at 73. In determining the officer's intention, it is important to consider the extent to which the officer's interroga-

tion was formal, *Davis*, 547 U.S. at 827, and the extent to which the complainant's statement was unprompted, *Arnold*, 486 F.3d at 190.

¶ 16. Thus, the main factors for our analysis are: (1) whether the emergency was ongoing because the crime was being committed at the time of the hearsay statement or because the complainant or officer was in imminent physical danger; and (2) whether the officer's primary purpose was to resolve an emergency or to investigate a possible criminal act.

¶ 17. At the outset, we recognize that the district court emphasized other factors. Although our review of this question is plenary, we address some of those factors, because they may arise in other cases. The court stressed the complainant's distress. However, the complainant in a domestic-assault case may be upset long after an emergency situation has been resolved. See *Walker*, 728 N.W.2d at 907 (the fact that the victim was still visibly distressed was not dispositive). Indeed, a complainant subjected to an assault like the one alleged here may be upset for days after the emergency has ended, as was the case in *Mason*, 162 P.3d at 403. We acknowledge that, in some instances, the complainant's emotional state might reflect the presence of a continuing danger. See, e.g., *Bradley*, 862 N.E.2d at 80-81 (hearsay was not testimonial when victim was profusely bleeding, defendant was still present at scene, and victim was upset). A complainant's emotional state might also indicate that any questioning of complainant by the police was informal and unstructured. See *Hembertt*, 696 N.W.2d at 483-84 (victim's emotional state, and officer's response to it, made interrogation less formal for the purposes of *Davis* analysis). We conclude that the complainant's mental state is relevant only to the extent it is related to the other two *Davis* factors.

¶ 18. We have a similar reaction to the trial court's consideration of the recent nature of the crime. *Kirby* is helpful on this point. The complainant in *Kirby* was more seriously injured than was the complainant here, and the crime had been completed in the recent past. *Kirby*, 908 A.2d at 523. The court nonetheless held that the proffered hearsay was testimonial because there was no ongoing crime or emergency. *Id.* The fact that the crime had only recently occurred was held, on its own, to be unimportant. *Id.*; see also R. Kirst, *Confrontation Rules After*

*Davis v. Washington*, 15 J.L. & Pol'y 635, 643 (2007). The recent nature of a crime is relevant only to the extent it relates to the other *Davis* factors.

■ ¶ 19. The fact that a complainant is injured may be relevant if the complainant requires emergency medical attention, because such injuries would themselves constitute the kind of "bona fide physical threat" mentioned in *Davis*. 547 U.S. at 827. But these injuries must create an "ongoing emergency" to trigger the exception for nontestimonial hearsay explained in *Davis*. *Id.*

¶ 20. Although we cannot give controlling weight to some of the factors relied on by the district court, the remaining factors are sufficient for us to conclude that the hearsay statement was nontestimonial. The record supports the trial court's ruling that the emergency was ongoing, and that the officer's questions were intended to resolve the emergency, not to develop evidence for future prosecution.

¶ 21. The officer's questioning of the victim proceeded in two stages. In the first stage, the officer asked simple questions in order to determine what steps had to be taken to secure the victim and the scene. At that point, he did not know where the perpetrator was, whether he might return, or how to recognize him. The officer did not know the extent of the complainant's injuries. The officer described this initial questioning as follows:

> This happened very quickly. I mean, my job is to go in and make sure that she's safe, what happened to who, what, when, and how, do I have a bad guy in the house, he's fled.

The questioning was very informal and generated only basic information about the alleged perpetrator.

¶ 22. In the second phase, having resolved his safety and security concerns, the officer investigated the alleged crime, initially through interrogation of the complainant. Having evaluated complainant's injuries, the officer did not arrange for emergency medical care. He then took the complainant to the station to question her further and to prepare an affidavit.

■ ¶ 23. We conclude that the evidence objectively shows that the officer faced an emergency situation in the first phase and that he questioned the victim for the purpose of resolving that emergency. Cf. *Kirby*, 908 A.2d at 523 (emphasizing the existence

or absence of "an ongoing emergency or a crime in progress"). Indeed, the trial court characterized this phase as involving an emergency. As the trial court ruled, the victim's initial answers came when the officer was trying to determine the degree of continuing risk and the appropriate response to that risk. According to the findings, he had inconsistent information from the dispatcher. Although he was told that the perpetrator had fled the scene, the officer was also told that the "physical domestic [was] *in progress*" (emphasis added), and the district court found that the report occurred. The officer testified that he could not take the report that the perpetrator had fled "totally for granted until [he] ensure[d] that." Moreover, the perpetrator could have fled the home but remained nearby. See *Arnold*, 486 F.3d at 190 (fact that defendant was "still in the vicinity" relevant to whether emergency was ongoing).

¶ 24. The officer found the complainant bleeding, frantic, and crying. He could determine the complainant's need for immediate medical attention only by asking her questions. The officer did not know the extent of complainant's injuries when she made her initial statement. See *Anderson*, 163 P.3d at 1004 (hearsay nontestimonial where victim in need of emergency medical care). Finally, he needed to identify the alleged perpetrator in order to prevent the defendant from harming anyone on the scene.

¶ 25. Under the second *Davis* factor, we conclude that, in the first phase, the officer was acting to resolve the emergency and not to investigate a crime to attach responsibility. The major evidence of this is that he obtained only minimal information, conducted a very unstructured interview, and thereafter searched the apartment to see if defendant was still on the scene. Clearly, his actions were directed at protecting the complainant and himself. See *Bradley*, 862 N.E.2d at 81 (because the victim's statement was made "when the officer could reasonably have assumed, and apparently did assume, that he had an emergency to deal with, her statement was not testimonial").

¶ 26. For the above reasons, we conclude, as the trial court did, that the initial basic information disclosed by the complainant, including the name of the perpetrator, was nontestimonial. After the officer secured the scene and determined that the complainant did not need emergency medical treatment, his questioning of complainant obtained testimonial information. As the Supreme Court recognized in *Davis*, a conversation that begins as a

determination of the need for emergency assistance can later produce testimonial statements. *Davis*, 547 U.S. at 828. That is exactly what occurred here.

¶ 27. We recognize that the facts of this case are considerably closer than many of the other cases cited above. We also recognize that the facts here are not unusual for a domestic-violence intervention. We are not suggesting that an emergency can be found in every case in which the use of the excited-utterance-hearsay exception is appropriate and in which the perpetrator has left the scene. However, on the particular facts before the district court, we conclude that the complainant's initial statement was properly admitted.

*Affirmed.*