NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: Reporter@vtcourts.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2025 VT 69

No. 24-AP-320

| | |
|---|---|
| State of Vermont | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Orleans Unit, |
| | Criminal Division |
| | |
| Anna Sylvester | November Term, 2025 |

Lisa Warren, J. (Rule 807 motion); Justin P. Jiron, J. (motion for new trial)

Evan Meenan, Deputy State's Attorney, Montpelier, for Plaintiff-Appellee.

Matthew Valerio, Defender General, and A. Alexander Donn, Appellate Defender, Montpelier, for Defendant-Appellant.

PRESENT: Reiber, C.J., Eaton, Cohen and Waples, JJ., and Treadwell, Supr. J., Specially Assigned

¶ 1.   **EATON, J.**   Defendant Anna Sylvester appeals her conviction of lewd or lascivious conduct with a child. Defendant contends that the trial court violated her right to confrontation by permitting the child complainant to testify outside of defendant's presence pursuant to Vermont Rule of Evidence 807. We agree, and therefore reverse and remand for a new trial.

¶ 2.   In December 2017, defendant was charged with one count of lewd or lascivious conduct with a child. The charging affidavit alleged that in October 2017, A.G., who was then six years old, reported to her mother that defendant had touched her vaginal area. At the time, defendant and A.G.'s father were dating.

¶ 3.     Prior to trial, the court granted both the State's motion to admit statements made by A.G. during an October 2017 interview with a police detective and defendant's motion for A.G. to testify.  In November 2019, the State moved to allow A.G. to testify outside the presence of defendant pursuant to Rule 807.  The court held a hearing on the motion in October 2020 at which a school guidance counselor who had worked with A.G., testified for the State.  The guidance counselor testified that she had worked with A.G. on the possibility of testifying.  A.G. found it "extremely difficult" to talk about defendant's alleged conduct with the guidance counselor and repeatedly stated that she didn't want to testify in front of defendant.  The guidance counselor opined that testifying in front of defendant would cause trauma to A.G.  In November 2020, the trial court granted the motion to allow A.G. to testify by video outside of defendant's presence, concluding that testifying in front of defendant "would be traumatizing and would impair A.G.'s ability to testify."

¶ 4.     By April 2023, the case still had not proceeded to trial.  Defendant moved for a new hearing on the Rule 807 issue, arguing that A.G. was twelve years old and likely had emotionally matured such that she would be able to testify in front of defendant.  The State opposed the motion, arguing without elaboration that there had been no change in circumstances in A.G.'s ability to testify.  The court granted the motion for an additional hearing, noting that the State failed to support its assertion that nothing had changed since October 2020.

¶ 5.     The second hearing took place in June 2023.  The State presented testimony from a licensed clinical mental-health counselor who worked with A.G. at her elementary school. Following the hearing, the court issued an order reiterating its prior determination that A.G. should be allowed to testify by video.  The court found that the mental-health counselor had diagnosed A.G. with trauma and that in her professional opinion, requiring A.G. to testify in defendant's presence would likely be detrimental to A.G.  The court found by a preponderance of the evidence

2

that testifying in defendant's presence "would be traumatizing and would impair A.G.'s ability to testify, notwithstanding the passage of time since the court's earlier ruling."

¶ 6. Defendant moved for reconsideration, arguing that the trial court's findings did not satisfy the standard set forth in State v. Bergquist, 2019 VT 17, 210 Vt. 102, 211 A.3d 946, and Rule 807(c). The court granted the motion in part by amending its prior order to state "that A.G.'s ability to testify would be substantially impaired if she were required to testify in court and to see and hear the defendant."

¶ 7. A one-day jury trial was held in October 2023. The State first presented testimony from Sheriff Jennifer Harlow, who in her former capacity as a detective for the Newport Police Department interviewed A.G. in 2017 after A.G.'s mother reported defendant's alleged conduct to police. The videorecording of A.G.'s interview with Detective Harlow was admitted into evidence and played for the jury.

¶ 8. In the recording, A.G. stated that one time when she was staying over at defendant's house, defendant came into defendant's children's bedroom where A.G. and the other children were sleeping and "started to play with my private." A.G. stated that defendant "took her middle finger and started rubbing." A.G. could not remember if defendant's finger was on the inside or outside of her clothing. A.G. said that she was wearing pants, a shirt, and underpants. She subsequently stated, "I think she did it over my clothing." When asked if defendant's fingers actually touched her skin, she said, "I don't know." She reported that this happened more than one time but could not remember the last time. She stated, "it happens every time I go there." Later in the interview, A.G. stated that sometimes it happened in the living room. The detective asked if she could describe a time in the living room. A.G. responded that one time when she, defendant, and defendant's son were all snuggled up on the couch and were "like half asleep, she started doing it again."

3

¶ 9.     A.G.'s father testified that in October 2017, he was in a romantic relationship with defendant and spent most nights at her home along with defendant's two children, A.G., and A.G.'s brother. Defendant "treated [A.G.] like one of her own kids." The children shared a room, and A.G. had her own bed. At bedtime, A.G.'s father would tuck A.G. into bed and leave the room. Defendant usually stayed a bit longer because it took her children longer to fall asleep. Once, A.G.'s father woke up and noticed defendant was lying with A.G., which he found a "little bit" unusual because he tried to be A.G.'s primary source of comfort, but he did not question it at the time. When he learned of A.G.'s allegation, he was shocked. He initially believed that A.G. had been coached by her mother, with whom he had a rocky relationship, though he later changed his mind.

¶ 10.     A.G. testified that everything she said in her October 2017 interview was true. She testified that one of the incidents occurred at night, and the other time was during the day. She clarified that when she told the detective that defendant touched her "private," she meant her vulva. She did not know if the contact was over or under her clothing. She stated that her older brother sometimes stayed at defendant's house with her but was not present during the incidents in the living room or in the bedroom. She denied that her mother had coached her to report the alleged abuse.

¶ 11.     Defendant then took the stand in her own defense. She denied ever touching A.G. in her vaginal area. She stated that one time she had a conversation with A.G. about how to apply a cream that A.G. was supposed to put on her vaginal area, but stated that she never touched A.G. On rebuttal, A.G.'s father confirmed that, when A.G. was five years old, he had asked defendant to help with the cream.

¶ 12.     The jury found defendant guilty of lewd or lascivious conduct with a child. Defendant moved for a new trial, arguing among other things that her constitutional right against

4

self-incrimination had been violated when the prosecutor asked her why she had not presented her version of events to police before trial. The trial court denied the motion, concluding that the State erred by commenting on defendant's post-arrest silence but that the error was harmless. In October 2024, the court imposed a sentence of four-to-nine years, all suspended except thirty months to serve, with five years' probation. This appeal followed.

¶ 13. On appeal, defendant argues that her right to confrontation was violated by the trial court's decision to allow A.G. to testify outside of defendant's presence because the State did not present evidence sufficient to meet the standard set forth in Rule 807. She further argues that the court abused its discretion in denying her motion for a new trial because the prosecutor improperly commented on her post-arrest silence in violation of her right against self-incrimination. Because we agree that Rule 807 was not satisfied here, we reverse and remand for a new trial on that basis, and do not reach defendant's second argument.

¶ 14. Rule 807 permits the trial court to allow a child aged twelve or less who is the alleged victim of sexual assault or lewd or lascivious conduct with a child to testify outside the presence of the defendant at trial, either by two-way closed-circuit television or recorded testimony. V.R.E. 807(a), (b). The court may only make such an order if it finds by a preponderance of the evidence that requiring the witness to testify in the defendant's presence will cause trauma that would substantially impair the witness's ability to testify. V.R.E. 807(c).

¶ 15. We have not previously addressed the standard of review for a decision to grant accommodations under Rule 807. We typically review evidentiary rulings for abuse of discretion. See, e.g., State v. Oscarson, 2004 VT 4, ¶ 13, 176 Vt. 176, 845 A.2d 337 (reviewing admission of child hearsay statements under Vermont Rule of Evidence 804a for abuse of discretion); see also V.R.E. 611 (giving trial court discretion to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence"). Defendant argues, however, that we should

5

adopt the standard used by federal courts reviewing such accommodations under the equivalent federal statute, 18 U.S.C. § 3509. That statute provides that in a proceeding involving an offense against a child, the trial court may order the child's testimony be taken by closed-circuit television "if the court finds that the child is unable to testify in open court in the presence of the defendant, for any of the following reasons: . . . (ii) [t]here is a substantial likelihood, established by expert testimony, that the child would suffer emotional trauma from testifying." Id. § 3509(b)(1)(B). Federal appellate courts appear to uniformly agree that the trial court's factual findings in a decision under § 3509 are reviewed for clear error, "but whether those findings were sufficient to permit the use of closed-circuit television testimony consistent with [defendant's] constitutional right of confrontation is a legal issue that we review de novo." United States v. Turning Bear, 357 F.3d 730, 735-36 (8th Cir. 2004); see also United States v. Abundiz, 93 F.4th 825, 833 (5th Cir. 2024) (applying same standard); United States v. Protho, 41 F.4th 812, 825 (7th Cir. 2022) (same); United States v. Cotto-Flores, 970 F.3d 17, 39 (1st Cir. 2020) (same); United States v. Carrier, 9 F.3d 867, 870 (10th Cir. 1993) (same).

¶ 16. We are persuaded by the federal approach. Although Rule 807 gives the trial court some discretion to determine what specific accommodations to grant a child witness, the threshold decision to allow any accommodation presents a mixed question of law and fact. The ultimate issue in an appeal from a Rule 807 decision is whether the defendant's constitutional right to confrontation has been infringed by allowing the child witness to testify out of the defendant's presence. Cf. Bergquist, 2019 VT 17, ¶ 65 (explaining that State must make adequate showing of necessity in each case to justify allowing child to testify outside defendant's presence to avoid violating Confrontation Clause). We typically review confrontation challenges de novo, meaning without deference to the trial court. See, e.g., State v. Tribble, 2012 VT 105, ¶ 20, 193 Vt. 194, 67 A.3d 210 (reviewing de novo trial court's legal conclusions concerning Confrontation Clause

6

challenge to admission of videotaped deposition testimony); State v. Shea, 2008 VT 114, ¶ 8, 184 Vt. 453, 965 A.2d 504 (reviewing de novo trial court's legal conclusion as to whether hearsay was testimonial for Confrontation Clause purposes). The rule also requires the court to make specific factual findings, and we ordinarily review factual findings for clear error. See, e.g., State v. Pitts, 2009 VT 51, ¶ 6, 186 Vt. 71, 978 A.2d 14 (stating that on appeal of motion to suppress, trial court's factual findings are reviewed for clear error). We accordingly conclude that on appeal from a decision under Rule 807, the trial court's factual findings will be reviewed for clear error, but whether those findings are sufficient to permit the child to testify outside the presence of the defendant is a legal issue we review de novo.

¶ 17. With this standard in mind, we turn to the merits of defendant's appeal. The Confrontation Clause provides that in "criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The Confrontation Clause generally "guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact." Coy v. Iowa, 487 U.S. 1012, 1016 (1988). The rule reflects the longstanding view that "[i]t is always more difficult to tell a lie about a person 'to his face' than 'behind his back.' " Id. at 1019.

¶ 18. A defendant's right to confrontation is not absolute; rather, it is "a preference that must occasionally give way to considerations of public policy and the necessities of the case." Maryland v. Craig, 497 U.S. 836, 849 (1990) (quotation omitted). In Maryland v. Craig, the U.S. Supreme Court held that "a State's interest in the physical and psychological well-being of child abuse victims may be sufficiently important to outweigh, at least in some cases, a defendant's right to face his or her accusers in court." Id. at 853. The Court emphasized that the determination of necessity "must of course be a case-specific one." Id. at 855. The trial court must find that use of video testimony "is necessary to protect the welfare of the particular child witness who seeks to

7

testify" and "that the child witness would be traumatized, not by the courtroom generally, but by the presence of the defendant." Id. at 855-56.[*]

¶ 19. Vermont has implemented these principles in Rule 807(c), which provides as follows:

> The court shall make an order for two-way closed-circuit television or recorded testimony under this rule only upon a finding by a minimum standard of preponderance of the evidence that requiring the witness to testify in court and see and hear the party will result in trauma to the witness, caused by the presence of the party, which would substantially impair the ability of the witness to testify.

As we emphasized in Bergquist, the Confrontation Clause requires that "the State must show that the 'witness would be traumatized, not by the courtroom generally, but by the presence of the defendant.'" 2019 VT 17, ¶ 66 (quoting Craig, 497 U.S. at 856). The State "must also show that the witness would suffer a level of emotional trauma that 'is more than . . . mere nervousness or excitement or some reluctance to testify' and 'would impair the child's ability to communicate.'" Id. (quoting Craig, 497 U.S. at 856-57).

¶ 20. The trial court here made the finding required by Rule 807(c), but the finding was clearly erroneous. See State v. Norton, 2025 VT 56, ¶ 15 n.4, ___ Vt. ___, ___ A.3d ___ ("Factual findings are clearly erroneous when there is no credible evidence in the record to support them."). The evidence presented by the State at the June 2023 hearing did not reasonably support a finding

---

[*] The Craig opinion concluded that "where necessary to protect a child witness from trauma that would be caused by testifying in the physical presence of the defendant, at least where such trauma would impair the child's ability to communicate," use of video testimony is not prohibited by the Confrontation Clause. Id. at 857. In Bergquist, this Court interpreted this language "to require proof of not only a 'risk' of trauma, or a 'substantial risk' of trauma, but that it is more likely than not—in other words, that there is a preponderance of the evidence—that the child will be traumatized." 2019 VT 17, ¶ 67. Because the prior version of Rule 807 allowed the trial court to grant accommodations upon a lesser showing, we held that it violated the Confrontation Clause. Id. ¶ 68. In 2023, the rule was amended to require a standard of proof consistent with Bergquist and Craig. See Reporter's Notes—2023 Amendment, V.R.E. 807.

that testifying in defendant's presence or while being able to see or hear defendant would cause trauma to A.G. that would substantially impair her ability to testify.

¶ 21.   The only evidence presented by the State at the June 2023 Rule 807 hearing was the testimony of the licensed clinical mental-health counselor.   The mental-health counselor testified that she had been A.G.'s elementary school counselor for about a year and met with A.G. once a week for thirty to forty-five minutes.  She described A.G. as emotionally sensitive, intuitive, and highly intelligent.  A.G. was referred to her for an unspecified "stressor" that "ha[d] nothing to do with this case."  The mental-health counselor diagnosed A.G. with "adjustment disorder" in response to the unspecified stressor.

¶ 22.   The prosecutor asked if the mental-health counselor had spoken with A.G. about the case against defendant.  She replied, "I believe it has come up one time."  When asked what A.G.'s reaction was, the mental-health counselor stated:

> The context was it came up that just—I remember in a general sense that it was negatively affecting her current functioning.  In other words, this happened.  She referenced what—this particular event.  This happened, and so it's making it very difficult for me in this other area that's not really related.  So she shared something with me that I won't share today, but it was affecting her functioning, in other words, so it was a negative response regarding this.

On cross-examination, the mental-health counselor clarified that she and A.G. had never discussed the issue of A.G. testifying at trial.

¶ 23.   When asked her opinion about A.G. testifying, the mental-health counselor replied,

> It's very difficult to get up here.  It's very difficult for me to be up here.  And so a twelve year old who has experienced stressors in their life I would say it may not be beneficial for anyone for them to give testimony in front of a lot of different people where they are perceiving it to be unsafe.  And they could potentially freeze up or go into that fight/flight mode.  So that would be a concern.
>
> My other concern is anyone at this age at twelve years of age, going through puberty, just beginning to explore their sexuality, identify

9

things, and really starting to look at that, it's a very sensitive topic. So to talk about it in front of people that you may not know or have allegedly done this to you, this particular thing, is—is detrimental to her further development possibly.

I can never say a hundred percent how someone will react. That's not what I'm here for. However, I feel like we know enough about trauma and—and that—and I know enough about my client that she's—this could be detrimental to her further development.

The mental-health counselor could not say whether A.G. would be able to testify in front of defendant. On cross-examination, when asked if A.G. needed a trauma specialist, the mental-health counselor replied, "Perhaps one day." She explained that in her role as school counselor, she "d[id] not target or delve deeply into trauma."

¶ 24. The mental-health counselor's generalized assertions were insufficient to support the trial court's finding under Rule 807(c). First, she did not opine that requiring A.G. to testify would result in trauma to A.G., and her testimony cannot support a reasonable inference that such trauma was more likely than not to occur. The mental-health counselor had diagnosed A.G. with adjustment disorder, which she testified was a form of trauma, but her testimony suggested that this had to do with the other, unspecified "huge stressor" that was happening in A.G.'s life at the time, rather than defendant's alleged conduct. Relative to testifying, she opined generally that for a twelve-year-old who had experienced "stressors," it "may not be beneficial" to testify "in front of a lot of different people where they are perceiving it to be unsafe." She opined that having to testify was "possibly" detrimental to A.G.'s further development. These nonspecific and qualified statements did not show that A.G. would suffer emotional trauma beyond "mere nervousness or excitement or some reluctance to testify." Craig, 497 U.S. at 856 (quotation omitted). They also did not show that the detrimental effect of testifying would specifically be caused by the presence of defendant, rather than by the number of people watching or the atmosphere of the courtroom. See Turning Bear, 357 F.3d at 736 (holding trial court's finding that child was unable to testify

10

due to combination of fear of defendant, jury, and prosecutor, and size of courtroom insufficient to allow testimony by closed-circuit television because court failed to find child would be specifically traumatized by presence of defendant). The mental-health counselor's testimony therefore did not satisfy the Confrontation Clause's requirement of a case-specific showing by a preponderance of the evidence that the child witness would be traumatized by testifying in front of the defendant. See V.R.E. 807(c); see also Pitts v. Mississippi, No. 24-1159, 2025 WL 3260171, at *2, 607 U.S. __, __ (Nov. 24, 2025) (per curiam) (reaffirming that "generalized finding[s]" that testifying can be traumatic to child victim is insufficient to overcome defendant's right to face-to-face confrontation; emphasizing that case-specific finding of necessity is required).

¶ 25. Nor did the mental-health counselor's testimony support the trial court's finding that the trauma of appearing in front of defendant would substantially impair A.G.'s ability to testify. The mental-health counselor admitted that she never discussed the possibility of testifying with A.G. She opined generally that being on the witness stand was difficult and that testifying in front of people could cause a child witness to "potentially freeze up." She did not connect these generalities to A.G. or provide any specific details to support a finding that A.G. would be unable to testify. Rather, when asked if she thought A.G. would be "forthcoming" if A.G. had to testify in front of defendant, she responded, "I don't know . . . . that's something I can't say." The mental-health counselor's vague and nonspecific testimony was simply insufficient to demonstrate that A.G.'s ability to testify would be substantially impaired if she were in the same room as, and could see and hear, defendant. The trial court's finding is therefore clearly erroneous.

¶ 26. This case differs significantly from Bergquist, where we held that the trial court's Rule 807 finding was constitutionally sufficient. 2019 VT 17, ¶ 69. There, the child witness's therapist testified that the child had been diagnosed with post-traumatic stress disorder as a result of the alleged abuse, had difficulty talking about the allegations even with the therapist, and had a

11

strong reaction to discussing the abuse, which included "curling up in a ball, shutting down and not talking." Id. ¶ 55. The therapist in Bergquist opined that requiring the child witness to testify in a courtroom "create[d] a substantial risk of trauma" to the child "which would substantially impair her ability to testify" or respond to questions, which in turn supported the trial court's finding under Rule 807. Id. ¶¶ 55, 69. Here, in contrast, the mental-health counselor did not testify that A.G. had difficulty talking about defendant's alleged conduct or that she suffered a specific trauma resulting from the incident. Her opinion that testifying "possibly" could be detrimental to A.G. and that A.G. "potentially" might freeze up when questioned stands in contrast to the strong and specific opinion offered by the therapist in Bergquist. See id.; see also Abundiz, 93 F.4th at 833-34 (upholding trial court's finding that child witness was unable to testify in open court because there was substantial likelihood that she would suffer emotional trauma where child's therapist testified that child was traumatized by abuse, that testifying would deepen and create new trauma, and that child would be so flooded with anxiety if she saw defendant that she would be unable to testify).

¶ 27. The State argues that the guidance counselor's testimony at the October 2020 hearing supports the trial court's June 2023 decision to allow A.G. to testify outside of defendant's presence. However, the trial court explicitly based its decision solely on the evidence presented at the June 2023 Rule 807 hearing. The court convened that hearing because it was not persuaded that it could simply rely on its findings from three years earlier without violating defendant's constitutional rights. The State did not present evidence from the guidance counselor at the June 2023 hearing or argue that the court should consider her previous testimony in making its decision. Moreover, the October 2020 hearing and ruling were decided under the previous version of Rule 807, which this Court found unconstitutional because it did not require proof by a preponderance of the evidence that the child would be traumatized by testifying. Bergquist, 2019 VT 17, ¶¶ 67-

12

68. We therefore decline the State's invitation to rely on the guidance counselor's testimony to affirm the later Rule 807 ruling.

¶ 28. The evidence presented by the State at the June 2023 hearing was insufficient to support the trial court's finding that A.G. needed to testify outside of defendant's presence, as required by Rule 807(c) and Craig. The use of video testimony thus violated defendant's right to confrontation. The State claims, however, that the error was harmless because A.G.'s live testimony was "largely synonymous" with her recorded interview with the police detective, which was admitted into evidence.

¶ 29. The U.S. Supreme Court has explained that for Confrontation Clause violations,

> [a]n assessment of harmlessness cannot include consideration of whether the witness' testimony would have been unchanged, or the jury's assessment unaltered, had there been confrontation; such an inquiry would obviously involve pure speculation, and harmlessness must therefore be determined on the basis of the remaining evidence.

Coy, 487 U.S. at 1021-22. Thus, to determine whether the error was harmless we must review the record to see whether it is evident beyond a reasonable doubt that the jury would have convicted defendant without A.G.'s live testimony outside defendant's presence. State v. Lipka, 174 Vt. 377, 384, 817 A.2d 27, 34 (2002). Guiding our analysis are the following factors: "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." State v. Lynds, 158 Vt. 37, 42, 605 A.2d 501, 503 (1991) (quoting Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986)); see also Coy, 487 U.S. at 1021 (indicating that harmless-error standard set forth in Delaware v. Van Arsdall and derived from Chapman v. California, 386 U.S. 18, 24 (1967), applied to denial of face-to-face confrontation with child witness in prosecution for lascivious conduct).

13

¶ 30. Considering these factors, we cannot conclude beyond a reasonable doubt that A.G.'s testimony at trial had no effect on the verdict. There were no eyewitnesses or other corroborating direct evidence of the alleged conduct. See Lynds, 158 Vt. at 43, 605 A.2d at 503 (explaining that "evidence must be overwhelming for error to be harmless"). A.G.'s testimony from outside defendant's presence was critical to the prosecution because the case was a credibility contest between A.G. and defendant, who denied that she ever touched A.G. While A.G.'s trial testimony was generally similar to her recorded interview, her description of defendant's conduct during that interview was limited in detail. She described defendant touching her "private" without defining what part of the body she meant, and could not remember how many times it happened, when the last time was, or whether the touching occurred over or under her clothing. At trial, A.G. provided new details that could have made a difference to the jury's assessment of her credibility. For instance, she explained that when she said in her interview that defendant "touched her private," she meant her vulva. She also added new details about the timing of the incidents, where they occurred, and who else was present. She vouched for herself, stating that everything she said in the 2017 interview was true. Defendant did have an opportunity to cross-examine A.G., but this factor is outweighed by the "two most important factors," which are "the strength of the prosecution's case without the offending evidence and the strength of the offending evidence." Lipka, 174 Vt. at 385, 817 A.2d at 34.

¶ 31. Given the sparseness of A.G.'s allegations during the 2017 interview, the lack of any other significant corroborating evidence, the fact that A.G. and defendant were the only witnesses to the alleged conduct, and defendant's testimony that she never touched A.G., A.G.'s trial testimony could easily have affected the outcome of the jury's deliberations. The denial of face-to-face confrontation with A.G. was therefore not harmless. Cf. id. at 385-86, 817 A.2d at 34-35 (holding that court's error in permitting child victim to testify facing away from defendant

14

was not harmless because case was "classic swearing contest," defendant told different version of story, and State's case was not strong); <u>Oscarson</u>, 2004 VT 4, ¶ 46 (reversing defendant's conviction for sexual assault based on improper admission of hearsay evidence from child victim because testimony was critical to State's case and was not so fully corroborated or cumulative to make error harmless); <u>Lynds</u>, 158 Vt. at 42-43, 605 A.2d at 503-04 (concluding erroneous admission of deposition testimony of expert in sexual assault trial not harmless where alleged victim was State's only witness, there was no other corroborating evidence, and defendant denied allegations). Defendant's conviction accordingly must be reversed and the matter remanded for a new trial.

<u>Reversed and remanded for a new trial</u>.

FOR THE COURT:

_____

Associate Justice

15