2015 VT 74

## State of Vermont v. Lawrence Alers

[123 A.3d 825]

No. 14-145

Present: **Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.**

Opinion Filed May 22, 2015

___

*Thomas J. Donovan, Jr.*, Chittenden County State's Attorney, and *Pamela Hall Johnson*, Deputy State's Attorney, Burlington, for Plaintiff-Appellee.

*Allison N. Fulcher* of *Martin & Associates*, Barre, for Defendant-Appellant.

¶ 1. **Robinson, J.** Defendant Lawrence Alers was convicted of simple assault following a jury trial. He appeals, contending (1) that the trial court's admission of a particular out-of-court statement under the "excited utterance" exception to the hearsay rule violated his rights under the Confrontation Clause of the Sixth Amendment, and (2) that without the offending evidence, the State did not present sufficient evidence of bodily injury to support the conviction. We conclude that because the out-of-court statement was testimonial, its admission did violate defendant's confrontation rights. Although the error was not harmless, we conclude that even in the absence of the offending evidence, the State presented sufficient evidence to support a conviction. We accordingly reverse defendant's conviction and remand for a new trial.

## I. Facts

¶ 2. The testimony at trial may be summarized as follows. Around 8:30 p.m. on August 2, 2013, two men were parked at the Champlain Farms convenience store and gas station on Route 7 in Colchester when they heard a woman screaming. Both then observed a man with his arms around the neck of a woman (later identified as A.P.), dragging her backwards toward a black SUV. One of the men testified that the woman was in a "chokehold" and

was being jostled "like a ragged doll," was screaming, "freaked out," and "beyond herself." He shouted at the assailant, "what the fuck are you doing?" and started running in their direction. The assailant, later identified by one of the witnesses as defendant, released the woman and entered a parked car. The man then observed defendant drive toward A.P., as though he was trying to run her over, before exiting the lot and driving away. The other man also testified that the car appeared to "lurch forward towards" the woman, and then left the lot. He described the woman's demeanor at that point as "shaken" and "very distressed."

¶ 3. The Colchester Police Department received a panicked call about a fight at the Champlain Farms store, and an officer arrived at the scene about ten to fifteen minutes later. By the time the officer arrived, there were several other police officers already there standing with A.P. by a vehicle. The officer testified that he approached A.P., started to talk with her, and observed that she was "very upset," "shaking," and "having a hard time breathing." The officer testified A.P. told him that she had been assaulted by her ex-boyfriend, whom she identified as defendant. Over defendant's hearsay objection, the officer testified that A.P. told him she had argued with defendant, that she started to walk away, and that he then grabbed her from behind with his arm around her neck and dragged her backwards toward his vehicle. She told him that "she was scared and . . . felt pain." The officer asked her to rate the pain from one to ten, and she "put it at about a four." The officer recalled that, while he was speaking with A.P., she was very upset and crying, even "borderline hysterical at times." Defendant was charged with aggravated assault for driving his car at A.P., and simple assault for grabbing her around the neck.[1] Neither A.P. nor defendant testified at trial. The jury acquitted defendant of aggravated assault by attempt to cause serious

---

[1] Defendant was originally charged with one count of first-degree aggravated domestic assault, 13 V.S.A. § 1043(a)(1), and one count of second-degree aggravated domestic assault, 13 V.S.A. § 1044(a)(2)(B). After the trial court ruled that the evidence was insufficient to prove that the victim was a "family or household member" as required for the charged domestic-assault offenses, the first charge, involving the car, was amended to aggravated assault by attempt to cause serious bodily injury, 13 V.S.A. § 1024(a)(1), and the second charge involving defendant's grabbing A.P. around the neck was amended to simple assault by recklessly causing bodily injury. 13 V.S.A. § 1023(a)(3).

bodily injury, and convicted defendant on the charge of simple assault by recklessly causing bodily injury. This appeal followed.

## II. Hearsay Statements

¶ 4. At trial, defendant objected to the admission of the police officer's testimony on what A.P. had told him. Defendant conceded that some of the statements might be admissible under the rules of evidence, but argued that their admission would nonetheless violate his rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution because the statements were testimonial.[2] The trial court ruled that A.P.'s statements were admissible as excited utterances, and never squarely addressed defendant's Confrontation Clause objection. Instead, the court stated: "Well, it's not testimony if it's an excited utterance."

¶ 5. On appeal, defendant argues the trial court erred in admitting the officer's testimony on A.P.'s out-of-court statements to the officer, and in particular her statement that she was in pain, as excited utterances.[3] See V.R.E. 803(2) (allowing admission of out-of-court statements "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition"). Defendant further argues that the admission of the evidence violated the Confrontation Clause.

¶ 6. We review the trial court's factual findings for clear error, and we review de novo the court's legal conclusion as to whether the hearsay was testimonial. *State v. Shea*, 2008 VT 114, ¶ 8, 184 Vt. 453, 965 A.2d 504.

¶ 7. ■ In *Shea*, we considered facts similar to this case. There, defendant was accused of domestic assault, the complainant did not testify, and the trial court allowed an officer who arrived on the scene following the assault to testify about statements the complainant made to him about the assault. *Id.* ¶¶ 2-3. The defendant conceded that the hearsay statements were admissible under the rules of evidence as excited utterances, but challenged

---

[2] The State's suggestion that defendant did not preserve these objections with sufficient specificity is ill-founded. Not only did defense counsel specifically object on the basis of the Confrontation Clause, but he actually cited *Crawford v Washington*, 541 U.S. 36 (2004), the U.S. Supreme Court decision upon which defendant's argument was based.

[3] As set forth more fully below, A.P.'s statement that she felt pain was the State's primary evidence that defendant caused A.P. bodily injury — an essential element of the simple assault count as charged by the State.

the admissibility of the statements on Confrontation Clause grounds. *Id.* ¶ 8. Citing *Crawford v. Washington*, 541 U.S. at 68, we explained that the admission of an out-of-court statement violates the Confrontation Clause where the statement was testimonial, the declarant is unavailable to testify at trial, and there was no prior opportunity for cross-examination. *Id.* ¶¶ 8-9. This is true even when the statement is otherwise admissible under the rules of evidence (e.g., under a Rule 803 or 804 exception). *Id.* ¶ 8 (stating that where "statement qualifies as an excited utterance," declarant "was unavailable to testify at trial," and "defendant did not have any prior opportunity to cross-examine" declarant, issue "is whether the admitted hearsay is testimonial") (citing *Davis v. Washington*, 547 U.S. 813 (2006); *Crawford*, 541 U.S. at 68).

¶ 8. ▮ In *Shea*, we addressed the distinction between testimonial and nontestimonial statements by reviewing two pivotal U.S. Supreme Court cases on the subject. *Id.* ¶ 9. In *Crawford v. Washington*, the Court did not attempt to delineate the line between testimonial and nontestimonial statements, but held that interrogations by law enforcement officers are testimonial. 541 U.S. at 53. The Court held that a tape-recorded statement given to police while the witness was in police custody as a suspect in a case was testimonial, and that admission of the evidence violated the defendant's confrontation rights. *Id.* at 68-69; see also *Shea*, 2008 VT 114, ¶ 9.

▮▮ ¶ 9. In *Davis v. Washington*, the Supreme Court further explored the distinction between testimonial and nontestimonial statements in a case involving statements to a 911 dispatcher by a complainant who did not testify at trial. 547 U.S. 813. The Court explained:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Id.* at 822. Put differently, the proper inquiry is whether "the elicited statements were necessary to [enable the police] to *resolve*

the present emergency," or rather were intended to adduce "what had happened in the past."[4] *Id.* at 827. In *Shea*, we described the major considerations supporting the U.S. Supreme Court's conclusion that the statements in *Davis* were nontestimonial:

> (1) the 911 complainant was describing events as they happened, rather than past events; (2) the 911 complainant was facing an ongoing emergency; (3) the questions and answers were such that the elicited statements were necessary to be able to *resolve* the present emergency, rather than simply to learn (as in *Crawford*) what had happened in the past; and (4) the 911 interview was much less formal than the interview in *Crawford*. Thus, the Court concluded that the circumstances of the 911 interrogation objectively indicated that its primary purpose was to enable police assistance to meet an ongoing emergency.

2008 VT 114, ¶ 11 (footnote, internal citation, alterations, and quotation marks omitted).

¶ 10. ■ In sum, in *Shea*, we determined that "the main factors for our analysis are: (1) whether the emergency was ongoing because the crime was being committed at the time of the hearsay statement or because the complainant or officer was in imminent physical danger; and (2) whether the officer's primary purpose [in eliciting the statement] was to resolve an emergency or to investigate a possible criminal act." *Id.* ¶ 16.

¶ 11. We noted that other factors are of little independent value in showing the testimonial or nontestimonial nature of a statement. One such factor is "the complainant's distress." *Id.* ¶ 17. We "acknowledge[d] that, in some instances, the complainant's emotional state might reflect the presence of a continuing danger," because a declarant's distress may be linked to an assailant's continued presence on the scene or to a declarant's own injuries.

---

[4] Although this particular formulation emphasizes the perspective of the law enforcement officer who asks the questions in determining the purpose of the declarant's statements, the U.S. Supreme Court has also indicated that "the statements and actions of both the declarant and interrogators provide objective evidence of the primary purpose of the interrogation. . . . In many instances, the primary purpose of the interrogation will be most accurately ascertained by looking to the contents of both the questions and the answers." *Michigan v Bryant*, 562 U.S. 344, 367-68, 131 S. Ct. 1143, 1160-61 (2011).

*Id.* We also recognized that "[a] complainant's emotional state might also indicate that any questioning . . . was informal and unstructured." *Id.* Ultimately, however, "the complainant's mental state is relevant only to the extent" that it relates to the two main factors. *Id.* Relatedly, we found that "[t]he fact that the crime had only recently occurred" to be "relevant only to the extent it relates to the other *Davis* factors." *Id.* ¶ 18. Likewise, we noted that "[t]he fact that a complainant is injured may be relevant if the complainant requires emergency medical attention, because such injuries would themselves constitute the kind of bona fide physical threat mentioned in *Davis.*" *Id.* ¶ 19 (quotation marks omitted). However, we made it clear that the injuries "must create an ongoing emergency to trigger the exception for nontestimonial hearsay." *Id.* (quotation marks omitted).

¶ 12. In *Shea*, we considered whether the statements at issue were elicited primarily to enable police to meet an ongoing emergency, or whether the primary purpose of the officer's questioning was to establish past events. The police officer in *Shea* arrived on the scene three minutes after being dispatched to an "in progress" domestic assault. *Id.* ¶ 2. Upon arriving, the responding officer "found a woman standing at the door, frantic, crying, bleeding from the nose and cut over her eye" who told the officer that she had been assaulted by her boyfriend "within the last few minutes." *Id.* The victim "gave the officer defendant's name, and said that he had just left the house." *Id.* (footnote omitted). After checking the house to make sure that the defendant was no longer present and then broadcasting the defendant's description, the officer asked the victim to provide further details about the assault, and the victim did so. *Id.* At trial, the victim did not testify, and the State introduced, over the defendant's Confrontation Clause objections, the officer's testimony relating the victim's statements to the officer. *Id.* ¶ 3.

¶ 13. On appeal, we explained that "[t]he officer's questioning of the victim proceeded in two stages." *Id.* ¶ 21. The first stage occurred immediately following the officer's arrival on the scene, when the officer asked very quick and simple questions in order to determine what steps had to be taken to secure the victim and the scene. *Id.* We held that this "initial basic information disclosed by the complainant, including the name of the perpetrator, was nontestimonial." *Id.* ¶ 26. We concluded that the situation was an ongoing emergency because at the time, the officer "did not know

where the perpetrator was, whether he might return, or how to recognize him," nor "the extent of the complainant's injuries." *Id.* ¶ 21. We also noted that "[t]he questioning was very informal and generated only basic information about the alleged perpetrator." *Id.*

¶ 14. By contrast, we found that the subsequent, more detailed questioning, which occurred "[a]fter the officer secured the scene and determined that the complainant did not need emergency medical treatment," yielded "testimonial information." *Id.* ¶ 26. Although the assailant had not yet been arrested, this "second phase" of questioning occurred after the officer had resolved immediate "safety and security concerns," and so we found that the emergency could fairly be said to have passed. *Id.* ¶ 22. We noted that this was a typical case in which "a conversation that begins as a determination of the need for emergency assistance can later produce testimonial statements." *Id.* ¶ 26.

¶ 15. ■ With this legal framework in mind, we turn to this case. Because the trial court incorrectly believed that the statements were nontestimonial because they qualified as excited utterances under the rules of evidence, it made no findings concerning the factors informing the testimonial versus nontestimonial determination. The State, as the party seeking to introduce the out-of-court statement into evidence, bears the burden of showing that proffered statements are nontestimonial. E.g., *United States v. Duron-Caldera*, 737 F.3d 988, 993 (5th Cir. 2013) ("Significantly, the government bears the burden of defeating a properly raised Confrontation Clause objection by establishing that its evidence is nontestimonial." (quotation omitted)); accord *United States v. Arnold*, 486 F.3d 177, 192 (6th Cir. 2007) (en banc); *Frye v. United States*, 86 A.3d 568, 571 (D.C. 2014). We consider whether the trial court could have concluded that the State met its burden on this record.

¶ 16. ■ ■ The officer who testified about A.P.'s statements arrived on the scene fifteen minutes after the initial report, a significantly longer time than the three minutes in *Shea*. Notably, he testified that upon his arrival, "several other police officers" were already there standing with A.P. by a vehicle. The officer testified that it took a while "to get her to calm down enough to tell me what happened." He stated that he was "trying to speak with her and get . . . a statement of what happened." To that end,

the officer explained, "I asked her to kind of take me through what exactly happened." The officer testified that although he observed that A.P. was very upset and distraught, he did not observe any physical injuries.[5] It is not clear from the officer's testimony whether A.P. spontaneously offered that she was in pain, or whether she provided that information in response to the officer's inquiry. Moreover, the officer testified that A.P. was evaluated by rescue personnel on the scene and was not transported for medical treatment, although it is not clear whether this evaluation occurred before or after the officer's exchange with A.P. The State presented no evidence that defendant was believed to be at or near the scene at that time.

¶ 17. On this record, we conclude that the State did not meet its burden to demonstrate that the statements in question were nontestimonial. The officer's conversation with A.P. was focused on getting "a statement," rather than addressing an ongoing emergency. For that reason, the circumstances of the officer's conversation with A.P. are far more similar to the second stage of the officer's interview with the victim in *Shea*, after the officer had resolved immediate security and safety concerns, than the initial encounter in *Shea*, which took place when the officer first arrived on the scene.

¶ 18. The facts of this case are very similar to those in *State v. Mechling*, 633 S.E.2d 311 (W. Va. 2006). In that case, two sheriff's deputies were dispatched after receiving a call of a domestic disturbance in progress. *Id.* at 315. By the time the deputies arrived on the scene fifteen minutes later, the defendant had fled, and the deputies found the victim "crying and 'really shook up.'" *Id.* At trial, the victim did not testify. *Id.* at 323. Over the

---

[5] "The fact that a complainant is injured may be relevant if the complainant requires emergency medical attention, because such injuries would themselves constitute . . . an 'ongoing emergency' to trigger the exception for nontestimonial hearsay." *Shea*, 2008 VT 114, ¶ 19; see, e.g., *Commonwealth v. Williams*, 103 A.3d 354, 362-63 (Pa. Super. Ct. 2014) (finding ongoing emergency where victim had been mortally wounded by fire set by defendant, had suffered first- and second-degree burn wounds on nearly half her body, was in "severe pain, frantic, and repeatedly asking for help," and told 911 dispatcher that "she felt ready to pass out"); *Sanders v. State*, 77 So. 3d 484, 490 (Miss. 2012) (determining that victim's response to police officer's "what happened?" question was nontestimonial where victim had visible second- and third-degree burns covering his body, because primary purpose of exchange was to assess condition of victim in emergency situation).

defendant's objections, the sheriff's deputies testified that the victim had told the deputies that the defendant had struck her in the head twice. *Id.* at 315. The West Virginia Supreme Court determined that the statements were testimonial and thus concluded that "it was error under the Confrontation Clause for the [trial] court to permit the sheriff's deputies to testify as to their conversations with the victim." *Id.* at 323. The court explained:

> There was no emergency in progress when the deputies arrived, and the defendant had clearly departed the scene when the interrogation occurred. When the deputies questioned [the victim], they were seeking to determine "what happened" rather than "what is happening." Objectively viewed, the purpose of the deputies' interrogation was to investigate. a possible crime — which is, of course, precisely what the deputies *should* have done. But the statements taken by the deputies could not become a substitute for [the victim's] live testimony, because those statements "do precisely *what a witness does* on direct examination; they are inherently testimonial."

*Id.* (quoting *Davis*, 547 U.S. at 830).

¶ 19. On these similar facts, we conclude that the admission of the officer's testimony relaying A.P.'s out-of-court statements violated the Confrontation Clause.[6]

### III. Sufficiency of the Evidence

¶ 20. ▮▮▮▮ The trial court's error in this case clearly was not harmless. See *State v. Jackson*, 2008 VT 71, ¶ 18, 184 Vt. 173, 956 A.2d 1126 ("We will uphold a conviction despite a Confrontation Clause error if we find that the error was harmless *beyond a reasonable doubt.*" (quotation omitted)). "Bodily injury" to A.P. was an essential element of the charge of "simple assault by recklessly causing bodily injury" for which defendant was convicted. See 13 V.S.A. § 1023(a)(1) ("A person is guilty of simple assault if he or she . . . recklessly causes bodily injury to another."). "Bodily injury" is statutorily defined as "physical pain,

---

[6] Because we conclude that admission of the statements violated the Confrontation Clause, we do not reach defendant's alternative argument that they were improperly admitted as excited utterances.

illness, or any impairment of physical condition." *Id.* § 1021(1).[7] A.P.'s out-of-court statement that she felt pain, as relayed by the officer, was the most direct evidence presented by the State on the question of bodily injury.

¶ 21. On appeal, defendant contends that in the absence of the inadmissible hearsay, the State's evidence was insufficient to establish that defendant caused A.P. bodily injury, and that as a result, the State failed to prove an essential element of the charge for which he was convicted. Consequently, he argues, this Court must reverse and remand with instructions to enter a judgment of acquittal. The State responds that defendant failed to preserve his argument based on the sufficiency of the evidence in the absence of the testimony erroneously admitted. The State argues that at the end of the State's case, the only argument that defendant advanced in his motion for judgment of acquittal in connection with the simple-assault charge was that the State had failed to establish the necessary relationship for a domestic-assault charge. Defendant did not in that context raise the "bodily injury" issue. Moreover, defendant did not file a post-verdict motion for judgment of acquittal. Finally, the State argues on the merits that even without the improper hearsay testimony, there was sufficient evidence to support a finding that A.P. sustained bodily injury.

¶ 22. ▮▮▮ Even assuming that defendant properly preserved his objection, we conclude that the remaining evidence is not insufficient as a matter of law to support a conviction of simple assault as charged. In order to prove simple assault, as charged, the State must show that defendant caused A.P. bodily injury, defined to include "physical pain, illness, or any impairment of physical condition." 13 V.S.A. § 1021(1).[8] "Bodily injury" requires more than "mere touching." *State v. Bourn*, 139 Vt. 14, 17, 421 A.2d 1281, 1282-83 (1980).

¶ 23. ▮▮▮ There is no requirement that the State prove this element through direct evidence, such as A.P.'s own testimony,

---

[7] The trial court instructed the jury that in order to find the defendant guilty of simple assault, the State had to prove beyond a reasonable doubt that the defendant caused bodily injury to A.P. and that he acted recklessly in doing so. In order to prove the state of mind of recklessness, the court instructed the jury that the State had to prove that defendant "did a specific act or acts that would have caused, in fact, bodily injury to [A.P.]."

[8] The State did not charge defendant for "attempt[ing] to cause bodily injury," 13 V.S.A. § 1023(a)(1), but, rather for "recklessly caus[ing] bodily injury." *Id.*

rather than through circumstantial evidence. " 'The sufficiency of circumstantial evidence to support a conviction is measured against the same standard as all other evidence: it will sustain a conviction if sufficient to convince a reasonable trier of fact that the defendant is guilty beyond a reasonable doubt.' " *State v. Godfrey*, 2010 VT 29, ¶ 18, 187 Vt. 495, 996 A.2d 237 (quoting *State v. Warner*, 151 Vt. 469, 472, 560 A.2d 385, 387 (1989)).

¶ 24. Accordingly, in some cases a jury may infer that an assault causes pain or injury even in the absence of direct testimony to that effect. In *Wawrykow v. State*, the defendant was convicted of "intentionally, knowingly and recklessly caus[ing] bodily injury" to a police officer. 866 S.W.2d 87, 88 (Tex. Ct. App. 1993). The officer testified that the defendant gave him a "pretty good push" in the chest, and demonstrated the force of the push to the jury, but did not testify that the push caused him pain. *Id.* at 90. The Texas Court of Appeals rejected defendant's argument that the State had failed to prove bodily injury. The court noted that on appeal the defendant bore the burden of presenting a sufficient record to show error, that the officer had demonstrated to the jury how hard he was pushed by the defendant, and that on appeal defendant did not attempt to describe the force involved in the demonstration. *Id.* Given the circumstantial evidence, the court concluded, "We are of the opinion that case law requires us to view this unexplained demonstration before the jury as supporting the jury's verdict." *Id.* The court concluded that a rational factfinder could have inferred that the officer sustained "bodily injury" beyond a reasonable doubt. *Id.*

¶ 25. The same Texas court also upheld a different defendant's assault conviction in a companion case arising from the same altercation. *Wawrykow v. State*, 866 S.W.2d 96, 97 (Tex. Ct. App. 1993). There, the officer testified that the defendant — the daughter of the defendant in the case described above — hit him in the back of his head and back with her fists, hung off his neck, and choked him. *Id.* at 99-100. The court explained that "people of common intelligence do understand pain and some of the natural causes of pain," and noted that "the [statutory] definition of 'bodily injury' is purposefully broad and seems to encompass even relatively minor physical contacts so long as they constitute more than mere offensive touching." *Id.* at 99. The court held that based on the testimony, a jury could reasonably infer "that the com-

plainant did in fact suffer 'pain' under a fair interpretation of that term." *Id.*

¶ 26. In a similar case, the Mississippi Court of Appeals concluded that evidence that the defendant landed a "glancing blow" while swinging at a police officer was sufficient to support an inference that the officer was injured, although standing alone the proof was so weak that the court ordered a new trial. *Reynolds v. State*, 818 So. 2d 1287, 1288 (Miss. Ct. App. 2002) ("[P]roof of the incident itself may permit the jury to draw a reasonable inference that the victim suffered some pain, and . . . this inference is enough to establish bodily injury for purposes of a challenge to the sufficiency of the evidence of guilt," but such circumstantial proof standing alone has so little weight that a new trial is required).

¶ 27. ██ In this case, the State presented eyewitness testimony that with his arms around A.P.'s neck, defendant dragged her backwards toward a black SUV, that A.P. was in a "chokehold," that defendant jostled her "like a ragged doll," and that A.P. was screaming, "freaked out," and "beyond herself." Although a jury could conclude that this evidence is not enough to show beyond a reasonable doubt that defendant caused A.P. pain, a reasonable jury could infer from the evidence presented that A.P. did experience pain. For that reason, we conclude that even if defendant did preserve his sufficiency-of-the-evidence argument, remand for a new trial, rather than a judgment of acquittal, is the appropriate mandate in this appeal.

*Reversed and remanded.*