2015 VT 74











State v. Alers

 

2015 VT 74

 

[Filed 22-May-2015]

 

NOTICE:  This opinion is
subject to motions for reargument under V.R.A.P. 40
as well as formal revision before publication in the Vermont Reports. 
Readers are requested to notify the Reporter of Decisions by email at:
JUD.Reporter@state.vt.us or by mail at: Vermont Supreme Court, 109 State
Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections
may be made before this opinion goes to press.

 

 


 
 
 2015 VT 74
 
 


 


 
 
 No. 2014-145
 
 


 


 
 
 State of Vermont 
 
 
 Supreme Court
 
 
 
 
  
 
 
  
 
 
 
 
  
 
 
 On Appeal from
 
 
 
 
      v.
 
 
 Superior Court, Chittenden
 Unit,
 
 
 
 
  
 
 
 Criminal Division
 
 
 
 
  
 
 
  
 
 
 
 
 Lawrence Alers
 
 
 February Term, 2015
 
 
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
 
 
 Michael
 S. Kupersmith, J.
 
 
 
 
  
 
 


Thomas J. Donovan, Jr., Chittenden County State’s Attorney,
and Pamela Hall Johnson, 

  Deputy State’s Attorney, Burlington, for
Plaintiff-Appellee.

 

Allison N. Fulcher of Martin &
Associates, Barre, for Defendant-Appellant.

 

 

PRESENT:  Reiber, C.J.,
Dooley, Skoglund, Robinson and Eaton, JJ.

 

 

¶ 1.            
ROBINSON, J.   Defendant Lawrence Alers
was convicted of simple assault following a jury trial.  He appeals,
contending (1) that the trial court’s admission of a particular out-of-court
statement under the “excited utterance” exception to the hearsay rule violated
his rights under the Confrontation Clause of the Sixth Amendment, and (2) that
without the offending evidence, the State did not
present sufficient evidence of bodily injury to support the conviction. 
We conclude that because the out-of-court statement was testimonial, its
admission did violate defendant’s confrontation rights.  Although the
error was not harmless, we conclude that even in the
absence of the offending evidence, the State presented sufficient evidence to
support a conviction.  We accordingly reverse defendant’s conviction and remand for a new trial.

I.  Facts

¶ 2.            
The testimony at trial may be summarized as follows.  Around 8:30
p.m. on August 2, 2013, two men were parked at the Champlain Farms convenience
store and gas station on Route 7 in Colchester when they heard a woman
screaming.  Both then observed a man with his arms around the neck of a
woman (later identified as A.P.), dragging her backwards toward a black
SUV.  One of the men testified that the woman was in a “chokehold” and was
being jostled “like a ragged doll,” was screaming, “freaked out,” and “beyond herself.”  He shouted at the assailant, “what the fuck are you doing?” and started running in their
direction.  The assailant, later identified by one of the witnesses as
defendant, released the woman and entered a parked car.  The man then
observed defendant drive toward A.P., as though he was trying to run her over,
before exiting the lot and driving away.  The other man also testified
that the car appeared to “lurch forward towards” the woman, and then left the
lot.  He described the woman’s demeanor at that point as “shaken” and
“very distressed.”

¶ 3.            
The Colchester Police Department received a panicked call about a fight
at the Champlain Farms store, and an officer arrived at the scene about ten to
fifteen minutes later.  By the time the officer
arrived, there were several other police officers already there standing
with A.P. by a vehicle.  The officer testified that he approached A.P.,
started to talk with her, and observed that she was “very upset,” “shaking,”
and “having a hard time breathing.”  The officer
testified that A.P. told him that she had been assaulted by her ex-boyfriend,
whom she identified as defendant.  Over defendant’s hearsay objection, the
officer testified that the A.P. told him she had argued with defendant, that
she started to walk away, and that he then grabbed her from behind with his arm
around her neck and dragged her backwards toward his vehicle.  She told
him that “she was scared and . . . felt
pain.”  The officer asked her to rate the pain from one to ten, and she
“put it at about a four.”  The officer recalled that, while he was
speaking with A.P., she was very upset and crying, even “borderline hysterical
at times.”  Defendant was charged with aggravated assault for driving his
car at A.P., and simple assault for grabbing her around the neck.[1]  Neither A.P. nor defendant
testified at trial.  The jury acquitted defendant of aggravated assault by
attempt to cause serious bodily injury, and convicted defendant on the charge
of simple assault by recklessly causing bodily injury.  This appeal followed.

II.  Hearsay Statements

¶
4.            
At trial, defendant objected to the admission of the police officer’s
testimony on what A.P. had told him.  Defendant conceded that some of the
statements might be admissible under the rules of evidence, but argued that their
admission would nonetheless violate his rights under the Confrontation Clause
of the Sixth Amendment to the United States Constitution because the statements
were testimonial.[2]
 The trial court ruled that A.P.’s statements were admissible as excited
utterances, and never squarely addressed defendant’s Confrontation Clause
objection.  Instead, the court stated: “Well, it’s not testimony if it’s
an excited utterance.”

¶
5.            
On appeal, defendant argues the trial court erred in admitting the
officer’s testimony on A.P.’s out-of-court statements to the officer, and in
particular her statement that she was in pain, as excited utterances.[3]  See V.R.E. 803(2) (allowing
admission of out-of-court statements “relating to a startling event or
condition made while the declarant was under the stress or excitement caused by
the event or condition”).  Defendant further argues that the admission of
the evidence violated the Confrontation Clause.

¶
6.            
We review the trial court’s factual findings
for clear error, and we review de novo the court’s legal conclusion as to
whether the hearsay was testimonial. 
State v. Shea, 2008 VT 114, ¶ 8,
184 Vt. 453, 965 A.2d 504.

¶
7.            
In Shea, we considered facts similar to
this case.  There, defendant was accused of domestic assault, the
complainant did not testify, and the trial court allowed an officer who arrived
on the scene following the assault to testify about statements the complainant
made to him about the assault.  Id. ¶¶ 2-3.  The
defendant conceded that the hearsay statements were admissible under the rules
of evidence as excited utterances, but challenged the admissibility of the statements
on Confrontation Clause grounds.  Id. ¶ 8. 
Citing Crawford v. Washington, 541 U.S. 36, 68 (2004), we explained that
the admission of an out-of-court statement violates
the Confrontation Clause where the statement was testimonial, the declarant is
unavailable to testify at trial, and there was no prior opportunity for
cross-examination.  Id. ¶¶ 8-9.  This is true even
when the statement is otherwise admissible under the rules of evidence (e.g.,
under a Rule 803 or 804 exception).  Id. ¶ 8 (stating that
where “statement qualifies as an excited utterance,” declarant “was unavailable
to testify at trial,” and “defendant did not have any prior opportunity to
cross-examine” declarant, issue “is whether the admitted hearsay is
testimonial”) (citing Davis v. Washington, 547 U.S. 813 (2006); Crawford,
541 U.S. at 68).

¶
8.            
In Shea, we addressed the distinction
between testimonial and nontestimonial statements by
reviewing two pivotal U.S. Supreme Court cases on the subject.  Id. ¶ 9.  In Crawford v. Washington,
the Court did not attempt to delineate the line between testimonial and nontestimonial statements, but held that interrogations by
law enforcement officers are testimonial.  541 U.S. at
53.  The Court held that a tape-recorded statement given to police
while the witness was in police custody as a suspect in a case was testimonial, and that admission of the evidence violated the
defendant’s confrontation rights.  Id. at 68-69; see also Shea, 2008 VT 114, ¶ 9.

¶
9.            
In Davis v. Washington, the Supreme Court further explored the
distinction between testimonial and nontestimonial
statements in a case involving statements to a 911 dispatcher by a complainant
who did not testify at trial.  547 U.S. 813. 
The Court explained:

Statements
are nontestimonial when made in the course of police
interrogation under circumstances objectively indicating that the primary
purpose of the interrogation is to enable police assistance to meet an ongoing
emergency.  They are testimonial when the circumstances objectively
indicate that there is no such ongoing emergency, and that the primary purpose
of the interrogation is to establish or prove past events potentially relevant
to later criminal prosecution.

 

Id. at 822.  Put differently, the proper inquiry
is whether “the elicited statements were necessary to enable the police to
resolve the present emergency,” or rather were intended to adduce “what had
happened in the past.”[4] 
Id. at 827.  In Shea,
we described the major considerations supporting the U.S. Supreme Court’s
conclusion that the statements in Davis were nontestimonial:

(1) the 911 complainant was describing events as they
happened, rather than past events; (2) the 911 complainant was facing an
ongoing emergency; (3) the questions and answers were such “that the elicited
statements were necessary to be able to resolve the present emergency,
rather than simply to learn (as in Crawford) what had happened in the
past; and (4) the 911 interview was much less formal than the interview in Crawford. 
Thus, the Court concluded that the circumstances of the 911 interrogation
objectively indicated that its primary purpose was to enable police assistance
to meet an ongoing emergency.

 

2008
VT 114, ¶ 11 (footnote, internal citation, alterations, and quotation
marks omitted).

 

¶
10.        
In sum, in Shea, we determined that
“the main factors for our analysis are: (1) whether the emergency was
ongoing because the crime was being committed at the time of the hearsay statement
or because the complainant or officer was in imminent physical danger; and
(2) whether the officer’s primary purpose [in eliciting the statement] was
to resolve an emergency or to investigate a possible criminal act.”  Id. ¶ 16.

¶
11.        
We noted that other factors are of little
independent value in showing the testimonial or nontestimonial
nature of a statement.  One such factor is “the complainant’s
distress.”  Id. ¶ 17.  We
“acknowledge[d] that, in some instances, the complainant’s emotional state
might reflect the presence of a continuing danger,” because a declarant’s
distress may be linked to an assailant’s continued presence on the scene or to
a declarant’s own injuries.  Id.  We also recognized that “[a]
complainant’s emotional state might also indicate that any questioning
. . . was informal and unstructured.”  Id.  Ultimately, however, “the complainant’s mental state
is relevant only to the extent” that it relates to the two main factors.  Id.
 Relatedly, we found that “[t]he fact that the
crime had only recently occurred” to be “relevant only to the
extent it relates to the other Davis factors.”  Id.
¶ 18.  Likewise, we noted that “[t]he fact that a
complainant is injured may be relevant if the complainant requires emergency
medical attention, because such injuries would themselves constitute the kind
of bona fide physical threat mentioned in Davis.”  Id. ¶ 19 (quotation marks omitted). 
However, we made it clear that the injuries “must create an ‘ongoing emergency’
to trigger the exception for nontestimonial
hearsay.”  Id. (quotation marks omitted).  

¶
12.        
In Shea, we considered whether the
statements at issue were elicited primarily to enable police to meet an ongoing
emergency, or whether the primary purpose of the officer’s questioning was to
establish past events.  The police officer in Shea
arrived on the scene three minutes after being dispatched to an “in progress”
domestic assault.  Id. ¶ 2.
 Upon arriving, the responding officer “found a woman standing at the
door, frantic, crying, bleeding from the nose and cut over her eye” who told
the officer that she had been assaulted by her boyfriend “within the last few
minutes.”  Id.  The victim “gave the officer defendant’s name,
and said that he had just left the house.”  Id. (footnote
omitted).  After checking the house to make sure that the defendant was no
longer present and then broadcasting the defendant’s description, the officer
asked the victim to provide further details about the assault, and the victim
did so.  Id.  At trial, the victim did not testify, and the
State introduced, over the defendant’s Confrontation Clause objections, the
officer’s testimony relating the victim’s statements to the officer.  Id. ¶ 3.

¶
13.        
On appeal, we explained that “[t]he officer’s
questioning of the victim proceeded in two stages.”  Id.
¶ 21.  The first stage occurred immediately following the
officer’s arrival on the scene, when the officer asked very quick and simple
questions in order to determine what steps had to be taken to secure the victim
and the scene.  Id.  We held that this “initial basic
information disclosed by the complainant, including the name of the
perpetrator, was nontestimonial.”  Id. ¶ 26.  We concluded that the situation
was an ongoing emergency because at the time, the officer “did not know where
the perpetrator was, whether he might return, or how to recognize him,” nor
“the extent of the complainant’s injuries.”  Id. ¶ 21. 
We also noted that “[t]he questioning was very informal and generated
only basic information about the alleged perpetrator.”  Id.

¶ 14.        
By contrast, we found that the subsequent, more detailed
questioning, which occurred “[a]fter the officer secured the scene and determined that the complainant
did not need emergency medical treatment,” yielded “testimonial
information.”  Id. ¶ 26.  Although the assailant had not
yet been arrested, this “second phase” of questioning occurred after the
officer had resolved immediate “safety and security concerns,” and so we found
that the emergency could fairly be said to have passed.  Id. ¶ 22.  We noted that
this was a typical case in which “a conversation that begins as a determination of the need
for emergency assistance can later produce testimonial statements.”  Id. ¶ 26.

¶ 15.        
With this legal framework in mind, we turn to this case. 
Because the trial court incorrectly believed that the statements were nontestimonial because they qualified as excited utterances
under the rules of evidence, it made no findings concerning the factors
informing the testimonial versus nontestimonial
determination.  The State, as the party seeking to introduce the
out-of-court statement into evidence, bears the burden of showing that
proffered statements are nontestimonial.  E.g., United
States v. Duran-Caldera, 737 F.3d 988, 993 (5th Cir. 2013) (“Significantly,
the government bears the burden of defeating a properly raised Confrontation
Clause objection by establishing that its evidence is non-testimonial”
(quotation omitted)); accord United States v. Arnold, 486 F.3d 177, 192
(6th Cir. 2007) (en banc); Frye v. United States,
86 A.3d 568, 571 (D.C. 2014).  We consider whether the trial court could
have concluded that the State met its burden on this record.

¶ 16.        
The officer who testified about A.P.’s statements arrived on the scene
fifteen minutes after the initial report, a significantly longer time than the
three minutes in Shea.  Notably, he
testified that upon his arrival, “several other police officers” were
already there standing with A.P. by a vehicle.  The
officer testified that it took a while “to get her to calm down enough to tell
me what happened.”  He stated that he was “trying to speak with her and get . . . a statement of what happened.”  To
that end, the officer explained, “I asked her to kind of take me through what
exactly happened.”  The officer testified that although he observed that
A.P. was very upset and distraught, he did not observe any physical injuries.[5]  It is not
clear from the officer’s testimony whether A.P. spontaneously offered that she
was in pain, or whether she provided that information in response to the
officer’s inquiry.  Moreover, the officer testified that A.P. was
evaluated by rescue personnel on the scene and was not transported for medical
treatment, although it is not clear whether this evaluation occurred before or
after the officer’s exchange with A.P.  The State presented no evidence that
Defendant was believed to be at or near the scene at that time.

¶ 17.        
On this record, we conclude that the State did not meet its burden to
demonstrate that the statements in question were nontestimonial. 
The officer’s conversation with A.P. was focused on getting “a statement,”
rather than addressing an ongoing emergency.  For that reason, the
circumstances of the officer’s conversation with A.P. are far more similar to
the second stage of the officer’s interview with the victim in Shea, after the officer had resolved immediate
security and safety concerns, than the initial encounter in Shea,
which took place when the officer first arrived on the scene.

¶
18.        
The facts of this case are very similar to those in State v. Mechling, 633 S.E.2d 311 (W. Va. 2006).  In
that case, two sheriff’s deputies were dispatched after receiving a call of a
domestic disturbance in progress.  Id. at 315. 
By the time the deputies arrived on the scene fifteen minutes later, the
defendant had fled, and the deputies found the victim “crying and ‘really shook
up.’ ”  Id.  At trial, the
victim did not testify.  Id. at 323. 
Over the defendant’s objections, the sheriff's deputies testified that the
victim had told the deputies that the defendant had struck her in the head
twice.  Id. at 315.  The West
Virginia Supreme Court determined that the statements were testimonial and thus
concluded that “it was error under the Confrontation Clause for the [trial]
court to permit the sheriff’s deputies to testify as to their conversations
with the victim.”  Id. at 323.  The
court explained:

There
was no emergency in progress when the deputies arrived, and the defendant had
clearly departed the scene when the interrogation occurred.  When the
deputies questioned [the victim], they were seeking to determine “what
happened” rather than “what is happening.”  Objectively viewed, the
purpose of the deputies’ interrogation was to investigate a possible
crime—which is, of course, precisely what the deputies should have done. 
But the statements taken by the deputies could not become a substitute for [the
victim’s] live testimony, because those statements “do precisely what a
witness does on direct examination; they are inherently testimonial.”

 

Id. (quoting Davis,
547 U.S. at 830).

 

¶
19.        
On these similar facts, we conclude that the admission of the officer’s
testimony relaying A.P.’s out-of-court statements violated the Confrontation
Clause.[6]

III.  Sufficiency of the
Evidence

 

¶ 20.        
The trial court’s error in this case clearly was not
harmless.  See State v.
Jackson, 2008 VT 71, ¶ 18, 184 Vt.
173, 956 A.2d 1126 (“We will uphold a conviction despite a Confrontation Clause
error if we find that the error was harmless beyond a reasonable doubt.” (quotation omitted)).
 “Bodily injury” to A.P. was an essential element of the charge of “simple
assault by recklessly causing bodily injury” for which defendant was
convicted.  See 13 V.S.A. § 1023(a)(1)
(“A person is guilty of simple assault if he or she . . . recklessly
causes bodily injury to another.”).  “Bodily injury” is statutorily
defined as “physical pain, illness, or any impairment of physical
condition.”  Id. § 1021(1).[7] 
A.P.’s out-of-court statement that she felt pain, as
relayed by the officer, was the most direct evidence presented by the State on
the question of bodily injury.

¶ 21.        
On appeal, defendant contends that in
the absence of the inadmissible hearsay, the State’s evidence was insufficient
to establish that defendant caused A.P. bodily injury, and that as a result,
the State failed to prove an essential element of the charge for which he was
convicted.  Consequently, he argues, this Court must reverse and remand
with instructions to enter a judgment of acquittal.  The State responds
that defendant failed to preserve his argument based on the sufficiency of the
evidence in the absence of the testimony erroneously admitted.  The State
argues that at the end of the State’s case, the only argument that defendant
advanced in his motion for judgment of acquittal in connection with the
simple-assault charge was that the State had failed to establish the necessary
relationship for a domestic-assault charge.  Defendant did not in that context
raise the “bodily injury” issue.  Moreover, defendant did not file a
post-verdict motion for judgment of acquittal.  Finally, the State argues
on the merits that even without the improper hearsay testimony, there was
sufficient evidence to support a finding that A.P. sustained bodily injury.

¶
22.        
Even assuming that defendant properly preserved
his objection, we conclude that the remaining evidence is not insufficient as a
matter of law to support a conviction of simple assault as charged.  In
order to prove simple assault, as charged, the State must show that defendant
caused A.P. bodily injury, defined to include “physical pain, illness,
or any impairment of physical condition.”  13 V.S.A.
§ 1021(1).[8] 
“Bodily injury” requires more than “mere touching.”  State
v. Bourn, 139 Vt. 14, 17, 421 A.2d 1281, 1282-83 (1980).

¶
23.        
There is no requirement that the State prove this element through direct
evidence, such as A.P.’s own testimony, rather than through circumstantial
evidence.  “The
sufficiency of circumstantial evidence to support a conviction is measured
against the same standard as all other evidence: it will sustain a conviction
if sufficient to convince a reasonable trier of fact that the defendant is
guilty beyond a reasonable doubt.”  State v. Godfrey, 2010 VT 29, ¶ 18,
187 Vt. 495, 996 A.2d 237 (quoting State v. Warner, 151 Vt. 469, 472,
560 A.2d 385, 387 (1989)).

¶ 24.        
Accordingly, in some cases a jury may infer that an assault causes
pain or injury even in the absence of direct testimony to that effect.  In
Wawrykow v. State, the defendant was
convicted of “intentionally, knowingly and recklessly caus[ing] bodily injury” to a police officer.  866 S.W.2d 87, 88 (Tex. Ct. App. 1993).  The officer
testified that the defendant gave him a “pretty good push” in the chest, and
demonstrated the force of the push to the jury, but did not testify that the
push caused him pain.  Id. at 90. 
The Texas Court of Appeals rejected defendant’s argument that the State had
failed to prove bodily injury.  The court noted that on appeal the
defendant bore the burden of presenting a sufficient record to show error, that
the officer had demonstrated to the jury how hard he was pushed by the defendant,
and that on appeal defendant did not attempt to describe the force involved in
the demonstration.  Id.  Given the circumstantial evidence,
the court concluded, “We are of the opinion that case
law requires us to view this unexplained demonstration before the jury as
supporting the jury’s verdict.”  Id.  The court concluded that
a rational factfinder could have inferred that the officer sustained “bodily
injury” beyond a reasonable doubt.  Id.

¶
25.        
The same Texas court also upheld a different
defendant’s assault conviction in a companion case arising from the same
altercation.  Wawrykow v. State, 866 S.W.2d 96, 97 (Tex. Ct. App. 1993). 
There, the officer testified that the defendant—the daughter of the defendant
in the case described above—hit him in the back of his head and back with her
fists, hung off his neck, and choked him.  Id.
at 99-100.  The court explained that “people of common intelligence
do understand pain and some of the natural causes of pain,” and noted that “the
[statutory] definition of ‘bodily injury’ is purposefully broad and seems to
encompass even relatively minor physical contacts so long as they constitute
more than mere offensive touching.”  Id. at 99. 
The court held that based on the testimony, a jury could reasonably infer “that
the complainant did in fact suffer ‘pain’ under a fair interpretation of that
term.”  Id. at 100.

¶ 26.        
In a similar case, the Mississippi Court of Appeals concluded that
evidence that the defendant landed a “glancing blow” while swinging at a police
officer was sufficient to support an inference that the officer was injured, although standing alone the proof
was so weak that the court ordered a new trial.  Reynolds v. State,
818 So. 2d 1287, 1288 (Miss. Ct. App. 2002) (“[P]roof of the incident
itself may permit the jury to draw a reasonable inference that the victim
suffered some pain, and . . . this inference
is enough to establish bodily injury for purposes of a challenge to the sufficiency of the evidence of guilt,” but such circumstantial proof standing
alone has so little weight that a new trial is required).

¶
27.        
In this case, the State
presented eyewitness testimony that with his arms around A.P.’s neck,
defendant dragged her backwards toward a black SUV, that A.P. was in a “chokehold,”
that defendant jostled her “like a ragged doll,” and that A.P. was screaming,
“freaked out,” and “beyond herself.”  Although a jury could conclude that
this evidence is not enough to show beyond a reasonable doubt that defendant
caused A.P. pain, a reasonable jury could infer from the evidence presented
that A.P. did experience pain.  For that reason, we conclude that even if
defendant did preserve his sufficiency-of-the-evidence argument, remand for a
new trial, rather than a judgment of acquittal, is the appropriate mandate in
this appeal.

Reversed and remanded.


 
 
  
 
 
  
 
 
 FOR THE COURT:
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
 Associate
 Justice
 
 


 

 














[1] 
Defendant was originally charged with one count of first-degree aggravated
domestic assault, 13 V.S.A. § 1043(a)(1), and one
count of second-degree aggravated domestic assault, 13 V.S.A.
§ 1044(a)(2)(B).  After the trial court ruled that the evidence was
insufficient to prove that the victim was a “family or household member” as
required for the charged domestic-assault offenses, the first charge, involving
the car, was amended to aggravated assault by attempt to cause serious bodily
injury, 13 V.S.A. § 1024(a)(1), and the second
charge involving defendant’s grabbing A.P. around the neck was amended to
simple assault by recklessly causing bodily injury.  13 V.S.A.
§ 1023(a)(3).

 





[2]
 The State’s suggestion that defendant did not preserve these objections
with sufficient specificity is ill-founded.  Not only did defense counsel
specifically object on the basis of the Confrontation Clause, but he actually
cited Crawford v. Washington, 541 U.S. 36 (2004), the U.S. Supreme Court
decision upon which defendant’s argument was based.

 





[3]
 As set forth more fully below, A.P.’s statement that she felt pain was
the State’s primary evidence that defendant caused A.P. bodily injury—an
essential element of the simple assault count as charged by the State.





[4]  Although this particular formulation
emphasizes the perspective of the law enforcement officer who asks the
questions in determining the purpose of the declarant’s statements, the U.S.
Supreme Court has also indicated that “the statements and actions of both the
declarant and interrogators provide objective evidence of the primary purpose
of the interrogation. . . . In many instances, the primary
purpose of the interrogation will be most accurately ascertained by looking to
the contents of both the questions and the answers.”  Michigan
v. Bryant, 131 S. Ct. 1143, 1160-61 (2011).





[5]
 “The fact that a complainant is injured may be relevant if the
complainant requires emergency medical attention, because such injuries would
themselves constitute . . . . an ‘ongoing emergency’ to trigger the exception for nontestimonial hearsay.”  Shea, 2008 VT 114,
¶ 19; see, e.g., Commonwealth v. Williams, 103 A.3d 354, 362-63
(Pa. Super. Ct. 2014) (finding ongoing emergency where victim had been
mortally wounded by fire set by defendant, had suffered first- and
second-degree burn wounds on nearly half her body, was in “severe pain, frantic, and repeatedly asking for help,” and
told 911 dispatcher that “she felt ready to pass out”); Sanders v.
State, 77 So. 3d 484, 490 (Miss. 2012) (determining that victim’s
response to police officer’s “what happened?” question was nontestimonial
where victim had visible second- and third-degree burns covering his body,
because primary purpose of exchange was to assess
condition of victim in emergency situation).





[6]
 Because we conclude that admission of the statements violated the Confrontation
Clause, we do not reach defendant’s alternative argument that they were
improperly admitted as excited utterances.

 





[7]  The trial
court instructed the jury that in order to find the defendant guilty of simple
assault, the State had to prove beyond a reasonable doubt that the defendant
caused bodily injury to A.P. and that he acted recklessly in doing so.  In
order to prove the state of mind of recklessness, the court instructed the jury
that the State had to prove that defendant “did a specific act or acts that
would have caused, in fact, bodily injury to [A.P.].”

 





[8]
 The State did not charge defendant for “attempt[ing]
to cause . . . bodily injury,”
13 V.S.A. § 1023(a)(1), but, rather for “recklessly . . . caus[ing] bodily injury.”  Id.